■ KARL TIBORSKY, Individually and as Father and Natural Guardian of DEREK TIBORSKY, an Infant, Appellant, v LOUIS MARTORELLA et al., Respondents.—Yesawich Jr., J. Appeal (transferred to this Court by order of the Appellate Division,

Second Department) from a judgment of the Supreme Court (Weiner, J.), entered March 5, 1991 in Rockland County, upon a verdict rendered in favor of defendants.

Defendant Louis Martorella, an obstetrician, attended Marlena Tiborsky during labor and delivery of plaintiff's infant. To aid Tiborsky's labor, defendant prescribed Pitocin, a synthetic hormone that stimulates uterine contractions; the drug was administered for eight hours. At Martorella's direction, after 2½ hours of maternal pushing in an attempt to vaginally deliver the infant, a caesarean section was performed. The infant was subsequently diagnosed as suffering from cerebral palsy. This medical malpractice action, the thrust of which is that Martorella, and the professional corporation of which he is a part, negligently allowed the Pitocin-stimulated labor and maternal pushing to continue too long resulting in brain damage to the infant, was brought by plaintiff individually and on the infant's behalf.

During the trial, Hart Peterson, a pediatric neurologist who had been consulted by plaintiff regarding the infant's condition, was subpoenaed by and testified on behalf of defendants on their direct case. Peterson testified as to his records and the observations he made of the infant when he examined him at nine months of age, and also, over plaintiffs' objection, as to what in his expert opinion caused the infant's condition. His opinion that the infant's brain injury was unrelated to the labor and delivery process was based on other evidence adduced at trial.

The jury found that Martorella had departed from accepted medical practice, but that such departure was not a proximate cause of the infant's injuries. They also found that he had failed to obtain Tiborsky's informed consent for the administration of Pitocin or the direction to push, but that a reasonably prudent person would have given that consent. A verdict was returned in favor of defendants and a judgment was entered thereon. Plaintiff appeals, claiming, *inter alia,* that Supreme Court erred when it allowed Peterson to testify as an expert for the defense and to express an opinion as to the cause of the infant's condition.

We find plaintiff's claim to be without merit. Insofar as it is based on the proposition that Peterson violated the physician-patient privilege, that privilege was waived when the infant's medical condition was placed in issue *(see, Dillenbeck v Hess,* 73 NY2d 278, 287; *Connell v Beaulac,* 124 AD2d 457, 457-458). The case of *Anker v Brodnitz* (98 Misc 2d 148, *affd* 73 AD2d

589, *lv dismissed* 51 NY2d 703, 743), also relied upon by plaintiff, is similarly unavailing, as it merely prohibits a defendant in a medical malpractice action from privately interviewing the plaintiff's nonparty treating physician without first obtaining a court order or the patient's express consent. The *Anker* holding has been expressly limited to ex parte interviews during the pretrial discovery period *(see, Levande v Dines,* 153 AD2d 671, 672; *Zimmerman v Jamaica Hosp.,* 143 AD2d 86, 88, *lv denied* 73 NY2d 702).

On the other hand, once the discovery phase has clearly been completed, keeping a treating physician's testimony from the jury may be sufficiently prejudicial to merit a reversal *(Levande v Dines, supra,* at 671-672). The testimony at issue in *Levande v Dines (supra)* included not only the treating physician's findings from his evaluation of the patient (i.e., his records and recollections) but also his expert opinions derived from those findings. This is in keeping with the general rule that no party has a proprietary interest in any evidence, and that absent unfair prejudice each party has the right to marshall, and the jury has the right to hear, the testimony that best supports each position.

Finally, we note that the "potential unfair prejudice" mentioned in *Zimmerman v Jamaica Hosp. (supra,* at 89) refers to prejudice resulting from a party's failure to disclose medical reports prepared in anticipation of litigation, as required by CPLR 3121 (b). Because Peterson's records were available to plaintiff well in advance of the litigation, and all of the other evidence on which he based his opinions was entered into evidence by plaintiff, the dangers alluded to in *Zimmerman* are not present here. Plaintiff has not convincingly shown that he was unfairly prejudiced by Peterson's testimony or, for that matter, that it was different in any way from that of other experts who examined the infant and offered their opinions as to causation of the injury.

The only other point advanced by plaintiff worth noting concerns two billing cards which he contends the jury was improperly allowed to view during its deliberations. Plaintiff sought to have the cards removed from a folder containing Martorella's office records. Although the records had been initially placed in evidence by plaintiff, he argued that the billing cards had been overlooked and that a recorded exchange between plaintiff and Martorella's employee, critical of plaintiff's attitude regarding a billing dispute, should be redacted from the records. Defendants, however, refused to consent to the redaction, and not only was the jury allowed to

view the cards, Supreme Court marked them separately as exhibit "1A". Plaintiff contends that this constituted reversible error.

Once evidence is entered it may not be withdrawn, except with consent of the opposing party or by court order if the opposing party objected to its admission (see, Fisch, New York Evidence § 16, at 8 [2d ed]). Plaintiff offered the records, including the billing cards, into evidence and they were received without objection. Defendants having refused to consent, Supreme Court properly denied plaintiff's request to have the cards redacted.

Although marking the cards as "exhibit 1A" did unnecessarily draw the jury's attention to them, nothing in the record suggests that the jury was improperly influenced by the comments appearing on these cards. This is apparent from the fact that the jury found that Martorella did indeed depart from an appropriate standard of care and also failed to obtain Tiborsky's informed consent. In short, the error was harmless.

Mikoll, J. P., Mercure, Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.