OPINION OF THE COURT
John P. Lane, J.
*793 Defendant’s motion seeks an order permitting defense counsel to interview and prepare all State employees involved in the care and treatment of Frank J. Luce, Jr., outside the presence of Mr. Luce, his family, his counsel, or any others not of defendant’s choosing, through the conclusion of all legal proceedings against the defendant.
The claim arose March 29, 1991 at Gowanda Psychiatric Center when Frank J. Luce, Jr., an involuntary patient, attempted suicide by hanging himself with a lace from one of his sneakers. Although the attempt failed, Mr. Luce suffered serious injuries as a result of the incident. The trial was bifurcated, and a decision filed October 31, 1997 determined that the State of New York was fully responsible for Mr. Luce’s injuries. The case is now being prepared for trial on the question of damages.
At present, Mr. Luce is still in a State facility and is under the care of the same psychiatrist who was treating him at the time of the suicide attempt. In informal discussions, claimant’s counsel made known to defense counsel his objections to the State’s having unfettered access to Mr. Luce’s treating physicians, psychologists, social workers, nurses and other health care personnel in preparing for the damages trial. Claimant’s counsel also expressed his objection to any private interviews with such personnel in preparation for scheduled examinations before trial. In response, defense counsel brought on the instant motion by order to show cause. It is defense counsel’s position that claimant has waived the physician-patient privilege by virtue of having brought this lawsuit (see, Koump v Smith, 25 NY2d 287), and that the State would be unfairly restricted should private interviews be prohibited because the personnel in question are State employees for whose acts defendant is responsible, rather than independent third parties.
The court has reviewed the authorities cited by counsel, in particular, Stoller v Moo Young Jun (118 AD2d 637); Cwick v City of Rochester (54 AD2d 1078); Fedell v Wierzbieniec (127 Misc 2d 124, affd without opn 116 AD2d 990); and Anker v Brodnitz (98 Misc 2d 148, affd 73 AD2d 589, lv dismissed 51 NY2d 743). The court has also taken into consideration the statutory scheme set forth in Mental Hygiene Law § 33.13 for protecting the confidentiality of records of the mentally disabled.
Cwick v City of Rochester (54 AD2d 1078, supra) concluded that there was no authority to “interview” a medical witness under the Rules of the Appellate Division, Fourth Department, *794 or under CPLR article 31, and that ample disclosure devices are available under article 31 to obtain whatever information is properly obtainable by a defendant.
Anker v Brodnitz (98 Misc 2d 148, supra) observed that Koump v Smith (25 NY2d 287, supra) did not expressly deal with questions such as by what procedures other than formal ones, if any, and subject to whose control shall medical information be exchanged after the privilege has been waived by the commencement of a lawsuit. The court concluded that “the better rule denies defendant the right to question plaintiffs doctors outside formal discovery procedures” (98 Misc 2d, at 151), focusing on the need to protect the physician-patient relationship, which is the very purpose of the physician-patient privilege. (See, Zimmerman v Jamaica Hosp., 143 AD2d 86, 88, lv denied 73 NY2d 702 [in the instant case, as in the cases involving third-party physicians, the patient is still under treatment with the very person or persons whose cooperation is being sought by defense counsel]; but see, Nielsen v Apisson, 138 Misc 2d 74 [holding that a private interview was permissible after the note of issue had been filed and defendant had served a subpoena for the testimony of one of plaintiffs treating physicians at trial].) Following Nielsen v Apisson (supra), defense counsel has attempted to distinguish the instant case on the ground that the existence of an interlocutory judgment of liability and the fact that the parties are now preparing simply for ascertainment of damages place it in a different procedural context from that dealt with in Anker v Brodnitz (supra). The court disagrees and fails to see the distinction.
The decision in Anker v Brodnitz (supra) also noted the possibility that a doctor who discloses his or her patient’s confidences without authority might be open to a charge of professional misconduct or a lawsuit by the patient for breach of confidentiality, or be subjected to improper pressures from a defending insurance company. Further, the court pointed out that even if such is not the case, it is not always easy to determine the extent to which the privilege has been waived and it is therefore preferable to restrict disclosure to that obtainable pursuant to statute, court rule, or express consent so that the patient’s attorney can be afforded an opportunity to object to the disclosure of medical information that is remote, irrelevant or otherwise improper.
With respect to the question of a possible lawsuit for breach of confidentiality mentioned in the Anker decision (supra) (and alluded to by claimant’s counsel at oral argument as likely to *795 result should any employees of the Department of Law contact Mr. Luce’s caregivers in contravention of the court’s ruling from the Bench), we note, however, that the Second Department subsequently clarified Anker in Feretich v Parsons Hosp. (88 AD2d 903, 904), stating that “these limits on disclosure are imposed not because of the physician-patient privilege, which is generally waived by bringing a malpractice action, but by the very design of the specific disclosure devices available in CPLR article 31” (emphasis added). In Fedell v Wierzbieniec (127 Misc 2d 124, supra), the issue was whether a cause of action for breach of confidence lay against a doctor who revealed communications between himself and the patient to the patient’s opponent in a personal injury action in which the patient’s physical and mental state were at issue, where such communications were outside the procedure required by the CPLR. Fedell relied on the Feretich case to conclude that although the conduct of the defendant doctor was outrageous, unprofessional and improper under the CPLR, it did not constitute a breach of confidence since the privilege of confidentiality had been waived by commencement of the original lawsuit.
The court is cognizant of defense counsel’s position that the treating psychiatrist in this case is in effect a “shadow client” with whom he should be allowed to confer freely. Defense counsel’s needs, however, must be balanced here against the importance of the physician-patient relationship, which in this case is ongoing. As far as the court is aware, Mr. Luce and his family had no voice in the selection of his treating psychiatrist and other caregivers after the unfortunate incident that caused his injuries.
For the reasons set forth above, it is hereby ordered that the motion is denied, and defendant’s communication with Mr. Luce’s caregivers regarding this case is restricted to the discovery devices provided in CPLR article 31 or to whatever other arrangements the parties can agree on.