OPINION OF THE COURT
Joseph J. Maltese, J.
The defendants are precluded from introducing opinion testimony from two of the plaintiffs treating doctors in this medical malpractice action because of an unauthorized interview of those physicians by the defendants’ counsel. This remedy is being used to stop attorneys from approaching the plaintiffs treating doctors in violation of the patient’s qualified rights of privacy that are guaranteed by the Health Insurance Portability and Accountability Act of 1996 (HIPAA).
Facts
On September 6, 2002, the plaintiff signed an authorization permitting Richmond Orthopedic Associates, a medical group which employs her treating physician, Dr. N. Jayaram, to release medical records to the defendants. On November 9, 2002, plaintiff signed an authorization permitting her treating physician, Dr. Brian Maloney, to release medical records to the defendants. On February 4, 2004, the plaintiff signed an authorization allowing defendants to obtain information from Dr. Maloney and to use that information for legal purposes. The first authorization regarding Dr. Maloney states that “[y]ou are not authorized to write a report or to give interviews to the party presenting this authorization.” The more recent authorization contained no such limitation.
Defendants’ counsel served subpoenas upon Dr. Jayaram and Dr. Maloney. Pursuant to the aforementioned authorizations and subpoenas, defense counsel met with Dr. Jayaram on March 15, 2004. Thereafter, a witness response as to Dr. Jayaram was served upon plaintiff on March 24, 2004. On June 21, 2004, defense counsel met with Dr. Maloney. A witness response as to Dr. Maloney was served on July 9, 2004.
The plaintiff has moved for a protective order pursuant to CPLR 3103 (c) to suppress the defendant’s witness response dated March 24, 2004 and notice of witness dated July 13, 2004 and for an order of preclusion on the grounds that this information was improperly obtained. That motion is granted.
*541 Discussion
This is a medical malpractice action against the plaintiffs obstetrician. According to the plaintiff, the defendant never informed plaintiff of the size of the fetus in comparison to her pelvic opening and then failed to perform a cesarean section during the delivery of the plaintiffs infant. As a result, the infant delivery was problematic, with shoulder dystoscia. According to the plaintiff, she demanded a cesarean section rather than risk harm to the baby or herself. These pleas were denied by the defendant and a McRoberts maneuver was performed, which resulted in repositioning the pelvic opening and delivering the infant. According to the plaintiff, the alleged malpractice caused a diastasis of the symphysis pubis, a separation of her pelvis with resultant pain which has continued to affect the plaintiff.
Defense counsel, Timothy Lenane, Esq., discussed the plaintiffs conditions with her treating physicians, Dr. Brian Maloney and Dr. N. Jayaram. After the plaintiff’s attorney discovered that these conversations had taken place, he contacted defense counsel and left a message directing Mr. Lenane to refrain and desist from conducting any further interviews of the plaintiffs treating physicians unless specifically authorized by the plaintiff in a signed and notarized authorization document. Notice was received from Mr. Lenane of his intention to continue contacting the plaintiffs doctors.
The physician-patient confidentiality privilege has been codified for over 175 years.* The confidentiality statute has been extended to other health care providers to include dentists, podiatrists, chiropractors and nurses, which is contained in CPLR 4504. However, plaintiffs waive certain rights of privacy when they claim an injury because the defendants are entitled to discover the nature of their injury. New York case law before the enactment of HIPAA held that no explicit authorization was required in order to interview the plaintiff’s doctors, merely bringing an action placed the plaintiffs medical condition at issue and constituted a waiver of the statutory physician-patient privilege (see, Koump v Smith, 25 NY2d 287, 293 [1969]; Zim *542 merman v Jamaica Hosp., 143 AD2d 86 [2d Dept 1988]). It is now common practice for a plaintiff to provide authorizations to the defendant to obtain relevant medical information.
In Anker v Brodnitz (98 Misc 2d 148 [Sup Ct, Queens County 1979], affd 73 AD2d 589 [2d Dept 1979], appeal dismissed 51 NY2d 703, 743 [1980]), the Appellate Division condemned ex parte interviews, and ratified the protocols regarding confidential communications set forth in the “Standards of Practice for Doctors and Lawyers” (adopted by both the New York State Bar Association and the Medical Society of the State of New York): “The attending physician must not give . . . oral reports . . . about a patient to attorneys, adjusters, or investigators representing parties whose interests are adverse to those of the patient without express written authorizations from the patient.”
However, in 1989 the Appellate Division of the Supreme Court, Second Department, in Levande v Dines (153 AD2d 671, 672 [2d Dept 1989]), held that contact could be made by the defendants with the treating physicians only after the note of issue was filed. This gave defendants the ability to contact a plaintiffs treating physicians without any obligations to obtain permission from the plaintiff or even to serve a notice or disclosure to the plaintiff of such conversations with their treating physicians. The plaintiffs bar has argued that this decision took away the protections of Anker and violated the spirit of the agreement between the New York State Bar Association and the Medical Society of the State of New York (supra). The practical effect was that Anker became limited to the pretrial discovery phase of the litigation.
In fact, in Levande v Dines (153 AD2d 671, 672 [2d Dept 1989]), the Second Department held that it was reversible error to preclude a subsequent treating physician from testifying at trial on the basis of Anker. Citing Zimmerman (supra), the Appellate Division found that there was no indication that the defendant conducted any prohibited interviews since he first contacted the treating doctor after the note of issue was filed. In Levande, the Appellate Division held that:
“We find that the trial court’s reliance on the Anker case was misplaced. The record contains no indication that the defendant conducted such prohibited interviews. The defendant first contacted Dr. Moccio after the note of issue had been filed, when the discovery phase of the action clearly had been *543 completed (see, Zimmerman v Jamaica Hosp., supra). In light of the fact that Dr. Moccio, unlike any of the other doctors who had testified, could have given a medical opinion based on his personal observations of the plaintiffs condition as it existed on July 1, 1981, the preclusion of such testimony was prejudicial, and accordingly, we reverse.” (Emphasis added.)
The policy reason for this rule is simple: conducting private interviews with a plaintiffs treating physician immediately after the service of a complaint would subject physicians to improper pressures in treating patients who are bringing lawsuits which most physicians would rather avoid (see Carrion v City of New York, 2002 WL 31093620, *2, 2002 US Dist LEXIS 17520, *6-7 [SD NY, Sept. 18, 2002], citing Anker, supra).
In order to further protect the privacy of medical patients, HIPAA and its affiliated regulations, which became effective in April 2003, provide federal protection to a patient’s health information. HIPAA contains a privacy rule which prevents protected health information (PHI) by identifiable individuals from being disclosed by “covered entities” to others without written consent of the individual or the opportunity to formally object. This federal rule preempts all state laws governing the treatment of PHI unless those laws are more stringent in safeguarding one’s privacy rights. The pre-HIPAA case law of New York, which allowed private interviews, was less stringent since it does not require an express authorization from the patient as is now required under HIPAA (45 CFR 164.508 [a] [1]). Consequently, the more stringent HIPAA rules must be applied by the courts. The law of New York provides no significant protections against a treating physician’s oral communication of a plaintiff patient’s private health information once a note of issue is filed. Therefore, preemption under HIPAA is appropriate. But HIPAA being a federal statute preempts New York CPLR 4504.
In the unpublished case of Beano v Post (Sup Ct, Queens County, Mar. 12, 2004, Index No. 5694/2001), Justice James Dollard found that New York law (Levande) was less stringent than HIPAA as the case law did not require authorizations for postdiscovery interviews. The court, however, did allow such interviews to occur under a set of protections that would afford the patient with his or her HIPAA rights. The court ordered the plaintiff patient to provide authorizations with restrictive *544 language that clearly indicated that the authorization was not at the request of the patient, which alerted the treating physician that there was no legal requirement for the physician to grant a private interview.
Interestingly, the defendant in this case also relies upon Beano v Post as precedent for allowing such an interview. However, counsel has not followed the requirements afforded by the spirit of that decision. The defendant has failed to exchange any complete, unedited copies of the written statements or notations of any documents obtained from the doctors interviewed. Defendant also conducted his interviews without giving notice to plaintiffs counsel. The Beano decision clearly contemplated that defendants would have an affirmative duty to create notes or memos of any statements made by the treating physician interviewed.
New Jersey has had a case on similar facts. In the case of Smith v American Home Prods. Corp. Wyeth-Ayerst Pharm. (372 NJ Super 105, 855 A2d 608 [NJ Super 2003]), defense counsel was ordered to: (a) provide plaintiffs counsel with the time and place of the requested interview; (b) provide the physician with the scope and content of the requested interview; and (c) clearly communicate in the authorization that the interview is voluntary, rather than mandatory, on the doctor’s part.
“The court further stated that ‘in light of the burgeoning importance of protecting an individual’s privacy particularly in regard to his or her medical information, the broad use of [ex parte interviews under New Jersey law] must somehow be readjusted to ensure compliance with the federal objectives under HIPAA.’ The court did not provide a panacea as to how this readjustment would be accomplished.” (See, Thomas A. Moore and Matthew Gaier, Medical Malpractice, Ex-Parte Interviews with Treating Physicians, NYLJ, July 6, 2004, at 3, col 1, at 6, col 6.)
This court agrees with Justice Dollard’s decision in Beano and holds that in order to comply with the federal HIPAA privacy rules a defendant’s counsel who wishes to interview a plaintiff patient’s treating health care provider must comply with the following provisions:
1. Defense counsel must obtain an authorization separate and apart from any other authorization;
*545 2. The authorization on its face should state in bold letters that the purpose of the disclosure is not at the request of (the plaintiff) patient;
3. The purpose should be stated in bold print, “The purpose of the information is to assist the defendant in defense of a lawsuit brought by the plaintiff’;
4. The authorization must contain the name and business address of the person to whom the health care provider or hospital employee may give an interview and identify the persons or entities the interviewer is representing (see 45 CFR 164.508 [c] [1] [hi]);
5. The authorization must conform to all of the core elements and requirements of 45 CRF 164.508 (c); and
6. There shall be a separate authorization for each interview and the authorization shall not be combined with a subpoena, which only acts to intimidate the doctor.
Within five days after the interview, whether in person or on the telephone or by any other manner which technology allows, the defendant must provide the plaintiff with
1. Any and all written statements, materials or notations and any document obtained from the interviewed health care provider; and
2. Copies of any memoranda, notes, audio or video recording, which records any oral or written statements made of the health care provider.
The defendant’s counsel need not disclose their observations, conclusions, impressions or analysis of any of the statements.
If after all of the above steps are complied with, the defense attorney chooses to call the plaintiffs treating physician as either a fact witness or as an expert witness, pursuant to CPLR 3101 (d) notice, the defense attorney shall not be precluded from conducting subsequent private discussions with the physician in preparation for their trial testimony and the contents of such further discussions need not be disclosed.
It is clear to this court that HIPAA and its regulations have changed the rules regarding ex parte communications with a plaintiffs treating health care providers. HIPAA protects the privacy of the plaintiff, and this court must protect that right. The only adequate remedy to protect that right is to preclude any evidence obtained contrary to those safeguards. In this case, the defendant did not have an authorization that allowed for private interviews. While it is clear that the authorization *546 would not have had the language suggested in this yet to be published decision, it is clear the defendants, at minimum, should have obtained an authorization which allowed for private interviews. By subpoenaing the doctors, the defendant’s counsel created a false impression to the doctors that they were under an obligation to speak with them. The doctors clearly did not do anything intentionally wrong as they believed they were complying with a subpoena. Here, the actions of the defense counsel misled the doctors.
Accordingly, the motion is granted for a protective order to the extent of prohibiting the defense from using the plaintiffs treating physicians as expert witnesses to give opinion testimony at trial. Moreover, the defense may not use any information obtained from the plaintiffs treating physicians which was obtained without a proper authorization signed by the plaintiff.

 “No person duly authorized to practice physic or surgery, shall be allowed to disclose any information which he may have acquired in attending any patient, in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.” (Rev Stat of NY, part III, ch VII, tit III, art 7, § 73 [1st ed 1829].)