OPINION OF THE COURT
Eileen Bransten, J.
Defendant Eli E Lizza, M.D. moves for an order granting defendants a qualified protective order permitting their attorneys to communicate with plaintiff’s decedent’s subsequent treating physician, Dr. Daniel Petrylak. Plaintiff — Tonia Browne, as executrix of Donald K. Browne, and Tonia Browne, individually — opposes the motion.
Background
In November 2001, Mrs. Browne commenced this medical malpractice and wrongful death action against Dr. Gary Horbar, M.D. and Dr. Lizza. Mrs. Browne alleges, among other things, that Dr. Horbar, an internist, failed to diagnose Mr. Browne’s bladder cancer, which resulted in his death. Dr. Lizza, Mr. Browne’s urologist, is similarly alleged to have departed from accepted medical practice in connection with Mr. Browne’s treatment.
The note of issue, signifying the end of disclosure, was filed over a year and a half ago — on April 15, 2003. The trial has been set for January 4, 2005, which is a firm and final date.
In advance of seeking his testimony at trial, Dr. Lizza’s counsel now wishes to speak to Mr. Browne’s oncologist, Dr. Daniel Petrylak. Dr. Petrylak’s records were produced during the disclosure period pursuant to an authorization from plaintiff. Dr. Petrylak, however, was not deposed.
On October 7, 2004, less than three months before trial, Dr. Lizza’s attorney requested that plaintiff provide an authorization allowing her or her designee “to speak with [Dr. Petrylak] about his treatment of Donald Browne.” (Affirmation in support, exhibit A.) Plaintiff has refused to provide a Health Insurance Portability and Accountability Act (HIPAA) compliant authorization permitting any private discussions.
Dr. Lizza now moves for a qualified protective order granting permission for Dr. Petrylak, if he chooses, to speak to defense counsel upon service of a nonjudicial subpoena in advance of trial. Plaintiff objects to the request. Among other things, she *782 vigorously opposes discussion of Mr. Browne’s care and treatment outside her presence. Plaintiff argues:
“[N]o matter what language is added to a subpoena, the recipient, a non-lawyer will feel compelled to comply, even though what is sought here is alleged not to require mandatory compliance.
“The defendant has indicated that he may want to call the doctor as a witness at trial. His identity has been known throughout the litigation; the defendant admits having long-term access to this doctor’s records (which have not changed) and the defendant could have sought the doctor’s deposition at any time during the discovery phase of the case.
“This last minute effort to compel plaintiff to either consent to provide an authorization or to compel issuance of what amounts to a Court order directing the doctor to speak to defense counsel or her ‘designee’ constitutes an application for discovery after the filing of the Note of Issue and is not proper . . . .” (Affirmation in opposition 1T1Í 8-10.)
In reply, Dr. Lizza asserts that parties have a right to speak with witnesses “in preparation for trial.” (Reply affirmation in support of motion for friendly subpoena [reply] 1i 3.) Dr. Lizza claims entitlement to a “friendly subpoena” so that Dr. Petrylak “will know that the plaintiff has waived his or her physician-patient privilege and that it would not be a violation [of the privilege] to speak with defendant’s attorney.” (Id. 1i 4.) Dr. Lizza sets forth that HIPAA regulations — specifically, 45 CFR 164.512 (e) — permit this court to allow “disclosure” for this judicial proceeding. (See, affirmation in support at 3.)
Because nothing requires the court to authorize what amounts to ex parte, post-note-of-issue discovery, Dr. Lizza’s motion is denied in the interests of justice and as an exercise of discretion.
Analysis
New York Disclosure Rules and Medical Malpractice Cases
CPLR 3101 mandates that there “shall be full disclosure of all matter material and necessary in the prosecution or defense of an action.” The Court of Appeals has explained that the words “material and necessary” are to be liberally construed “to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening *783 the issues and reducing delay and prolixity. The test is one of usefulness and reason.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].)
It is well settled, moreover, that when a plaintiff affirmatively puts one’s physical condition in issue, the physician-patient privilege will be deemed waived because “a party should not be permitted to affirmatively assert a medical condition in seeking damages . . . while simultaneously relying on the confidential physician-patient relationship as a sword to thwart the opposition in its efforts to uncover facts critical to disputing the party’s claim.” (Dillenbeck v Hess, 73 NY2d 278, 287 [1989].) Thus, through disclosure, a medical malpractice defendant is entitled to relevant medical records and information notwithstanding a patient’s assertion of privilege.
Here, Dr. Lizza was entitled to depose Dr. Petrylak, who treated Mr. Browne’s cancer. Dr. Petrylak may well possess information “material and necessary in the prosecution or defense” of this action. (CPLR 3101 [a] [4].) Had Dr. Petrylak attempted to resist a deposition, this court would have had no qualms entertaining — and likely granting — a motion to compel his appearance.
Postdisclosure Issuance of a “Friendly Subpoena”
The period for disclosure, however, ended over a year and a half ago. Now, for the first time, Dr. Lizza asks for this court’s assistance in informing Dr. Petrylak that he can have a conversation with defense counsel outside of plaintiff’s presence and without plaintiffs consent. Regardless of whether HIPAA authorizes this court to issue a “friendly subpoena” — which is not at all friendly to a plaintiff in that it places this court’s imprimatur on defense counsel conducting ex parte discussions with a treating physician without the patient’s consent — nothing compels the court to sign the subpoena here.
In support of his motion, Dr. Lizza cites many pre-HIPAA cases. (See, Zimmerman v Jamaica Hosp., 143 AD2d 86 [2d Dept 1988], lv denied 73 NY2d 702 [1988]; Tiborsky v Martorella, 188 AD2d 795, 796 [3d Dept 1992]; Levande v Dines, 153 AD2d 671 [2d Dept 1989]; Fraylich v Maimonides Hosp., 251 AD2d 251 [1st Dept 1998]; Luce v State of New York, 266 AD2d 877 [4th Dept 1999] [discussed infra at 784-786].) None requires the court to actively assist a party desirous of interviewing a treating physician for the first time after disclosure is over. Dr. Lizza argues that nothing prohibits post-note-of-issue discussions with Mr. Browne’s oncologist. Although *784 pre-HIPAA New York law does not prohibit the discussions, it does not compel the court, under circumstances such as these, to actively assist in the process.
Private Interviews With Treating Physicians: Pre-HIPAA Cases
In Anker v Brodnitz (98 Misc 2d 148 [Sup Ct, Queens County 1979], affd 73 AD2d 589 [2d Dept 1979], lv dismissed 51 NY2d 703, 743, 769 [1980]), Supreme Court, Queens County, addressed whether medical malpractice defendants could privately interview a nonparty treating physician without court order or the patient’s consent during pretrial discovery. Defendants argued that plaintiff waived any physician-patient privilege by commencing the action; therefore, private interviews were perfectly proper. The trial court disagreed. The Anker court explained that there was no relevant CPLR provision or court rule authorizing private interviews. The court emphasized that a “rule against . . . private interviews” will help ensure that only relevant medical information about a patient is disclosed and “will reduce unnecessary lawsuits for wrongful disclosure against doctors and insurers.” (Id. at 153.) It further determined that to “permit private interviews upon the service of a complaint would subject physicians to improper pressures to disclose” and compliance “with formal discovery procedures would insulate a physician against such improper pressures.” (Id. at 153.)
Dr. Lizza correctly points out that the Appellate Division has limited Anker. (See, Zimmerman v Jamaica Hosp., 143 AD2d 86 [2d Dept 1988], lv denied 73 NY2d 702 [1988]; Tiborsky v Martorella, 188 AD2d 795, 796 [3d Dept 1992]; Levande v Dines, 153 AD2d 671 [2d Dept 1989]; Fraylich v Maimonides Hosp., 251 AD2d 251 [1st Dept 1998]; Luce v State of New York, 266 AD2d 877 [4th Dept 1999].)
In Zimmerman v Jamaica Hosp. (143 AD2d 86 [2d Dept 1988], lv denied 73 NY2d 702 [1988]), for example, the Appellate Division, Second Department, held that there was no violation of any ethical or legal proscription occasioned by the trial testimony of a treating physician, who was called to the stand by the defense. The Court explained that the record did not establish that any improper private interviews took place. Confronted with the very same issue, in Tiborsky v Martorella (188 AD2d 795, 797 [3d Dept 1992]), the Appellate Division, Third Department, held that a physician that plaintiff consulted could testify for the defense at trial because “keeping a treating physician’s testimony from the jury may be sufficiently prejudicial to merit a reversal.”
*785 The court is not faced with whether or not Dr. Petrylak can testify for Dr. Lizza at trial. Thus, Zimmerman and Tiborsky are entirely inapposite.
Similarly, Levande v Dines (153 AD2d 671 [2d Dept 1989]) and Fraylich v Maimonides Hosp. (251 AD2d 251 [1st Dept 1998]) are readily distinguishable.
In Levande, the Appellate Division, Second Department, simply held that it was error for the trial court to preclude the testimony of plaintiff’s treating physician who had been contacted by defendant after discovery had been complete. (Levande v Dines, 153 AD2d at 672.) The Court distinguished Anker on the ground that the case was intended to protect “the sanctity of the physician-patient privilege during discovery,” and the interview conducted in Levande took place after the note of issue had been filed “when the discovery phase of the action clearly had been completed.” (Id.)
In Fraylich v Maimonides Hosp. (251 AD2d at 251), the Appellate Division, First Department, affirmed the trial court’s determination that defendants were not required to produce copies of documents relating to a private interview with plaintiff’s treating physician or to refrain from any such further interviews. The Court stated (at 251):
“We are in accord with the Second and Third Departments that the prohibition against the defendant in a medical malpractice action interviewing the plaintiff’s treating physicians without a court order or the plaintiffs consent is limited to the pretrial stage of the action, . . . not the situation here, where the offending interview was conducted after the note of issue was filed.”
Significantly, although Levande and Fraylich distinguish the holding in Anker, neither Appellate Division decision analyzes why the “sanctity of the physician-patient privilege” and the interest in insulating treating physicians from “improper pressures” are stronger before the note of issue is filed, but diminish once discovery is complete.
Dr. Lizza’s reliance on Luce v State of New York (266 AD2d 877 [4th Dept 1999]) is also misplaced. Luce involved a very different situation from that presented here. Frank J. Luce, Jr. was involuntarily committed to a New York State psychiatric facility. An action was commenced against the State, seeking recovery for injuries Mr. Luce sustained during an unsuccessful suicide attempt while he was committed. Trial was bifurcated, *786 and the State was found liable for the injuries. Before the damages portion of the trial, the Attorney General’s office sought the court’s permission to privately “interview and prepare all State employees involved in the care and treatment.” (Luce v State of New York, 177 Misc 2d 792, 793 [Ct Cl 1998], revd 266 AD2d 877 [4th Dept 1999].) The State argued that it would be improperly restricted without the ability to speak to the facility employees, including the psychiatrist who was treating him at the time of the suicide attempt. The State urged that it would be unfair to hold it liable for the acts of its employees without affording it an opportunity to defend the case and prepare for proceedings by interviewing those very employees. The trial court rejected the arguments and prohibited the State from preparing its “shadow client.” (Luce, 177 Misc 2d at 795.)
The Appellate Division reversed, holding that it was error to deny the State’s motion to permit the private interviews. (Luce v State of New York, 266 AD2d at 878.) The Appellate Division, Fourth Department, emphasized that the Anker prohibition barred private interviews with nonparty treating physicians and explained that if “this were an action against the individual health care providers, they would be entitled to confer privately with counsel.” (Id.)
Here, the court is not faced with the “shadow client” scenario presented in Luce. Dr. Lizza will not be held liable for the conduct of Dr. Petrylak; thus, the important justification for the private interviews in Luce is nonexistent.
Private Interviews With Treating Physicians: Post-HIPAA/ Privacy Act Cases
HIPAA’s privacy provisions became effective in 2003. The Appellate Division has not yet addressed whether allowing treating physicians to speak with individuals against their patients’ wishes is inconsistent with HIPAA. HIPAA certainly authorizes “[disclosures for judicial and administrative proceedings.” (See, 45 CFR 164.512 [e].) Requiring the release of patient medical records, which are readily available to the patient or its representative, and directing compliance with disclosure devices by compelling physicians to offer testimony at a deposition, where the patient or its representative has a right to be present, are very different, however, from authorizing private interviews.
Private interviews outside the patient or patient’s representative’s presence present very troubling confidentiality problems. In the course of private interviews, a treating physician may release information about a patient that has not even been com *787 municated to that patient. Additionally, there is a very real risk that defense counsel may inquire into matters that do not relate to the condition at issue and, unlike in the context of judicially supervised disclosure proceedings, no one is present to ensure that the patient’s rights are not violated. While it is clear that certain privacy rights are waived by commencement of a medical malpractice action, it is equally clear that there are limitations on the waiver.
Recent New York cases addressing the effect of HIPAA’s enactment on private interviews with a plaintiff’s treating physician have imposed many restrictions on the post-note-of-issue private interview process. In Beano v Post (Sup Ct, Queens County, Mar. 12, 2004, Dollard, J., Index No. 5694/2001), Supreme Court required plaintiff patient to provide authorizations for the private conference. To alert the physician that there was no legal requirement to grant the interview, the authorization was to clearly state that it “was not at the request of the patient.” (See, Keshecki v St. Vincent’s Med. Ctr., 5 Misc 3d 539, 544 [Sup Ct, Richmond County 2004, Maltese, J.] [discussing unpublished Beano decision].) Beano also contemplated that defendants “would have an affirmative duty to create notes or memos of any statements made by the treating physician interviewed” and that “complete, unedited copies” of the materials would be exchanged. (Id.)
In Keshecki v St. Vincent’s Med. Ctr. (5 Misc 3d 539 [2004]), Supreme Court precluded defendants from introducing opinion testimony from two of plaintiffs treating physicians because of unauthorized interviews. Justice Maltese concluded that HIPAA — a federal statute that preempts state law — “changed the rules regarding ex parte communications with a plaintiffs treating health care providers.” (Id. at 545.) Agreeing with the decision in Beano, Justice Maltese determined that before private interviews could take place, several conditions required satisfaction. For example, defense counsel is required to obtain a separate authorization, which “on its face should state in bold letters that the purpose of the disclosure is not at the request of (the plaintiff) patient [and that the] purpose of the information is to assist the defendant in defense of a lawsuit brought by the plaintiff.” (Id. [internal quotation marks omitted].) Additionally, the authorization may not be combined with a subpoena “which only acts to intimidate the doctor.” (Id.) After the interview is conducted, defendant must provide plaintiff with written statements, materials, notations and documents *788 obtained from the interviewed health care provider. (Id.) Defense counsel must further produce copies of any memoranda, “notes, audio or video recording, which records any oral or written statements made of the health care provider” without turning over any attorney observations, conclusions or impressions. (Id.) Upon satisfaction of, among other things, these requirements, if defense counsel chooses to call plaintiff’s treating physician as a witness, “the defense attorney shall not be precluded from conducting subsequent private discussions with the physician in preparation for . . . trial testimony and the contents of such further discussions need not be disclosed.” (Id.)
In other jurisdictions, courts have similarly concluded that patient privacy laws significantly restrict informal interviews of treating physicians. (See, Givens v Mullikin ex rel. Estate of Mc-Elwaney, 75 SW3d 383, 409 n 13 [Tenn 2002] [statements construed to “permit counsel to informally interview a physician without the patient’s consent no longer accurately reflect the law”].)
Some courts, by contrast, have held that HIPAA allows “informal discovery” but that judges have discretion in determining whether to authorize private interviews with treating physicians. (See, Smith v American Home Prods. Corp. Wyeth-Ayerst Pharm., 372 NJ Super 105, 136, 855 A2d 608, 627 [2003] [denying ex parte interviews as there was no necessity for informal discovery “so late into the . . . litigation”].)

Browne v Horbar

This case does not require the court to address whether HIPAA in an absolute sense prohibits ex parte interviews of treating physicians. Nor, under these circumstances, is there any occasion to analyze particular limitations that HIPAA may impose on such private discussions.
Dr. Lizza’s motion is denied for the very simple reason that judicial participation in the informal interview process by granting a qualified protective order under circumstances such as these would improperly permit medical malpractice defendants to obtain discovery after the note of issue has been filed without requiring adherence to the rules governing disclosure.
Dr. Lizza had a chance to examine Dr. Petrylak before trial, but inexplicably did not use it. Dr. Lizza, perhaps, did not believe that Dr. Petrylak’s testimony was all that important. Now, more *789 than a year and a half after disclosure has ended and less than three months before trial, Dr. Lizza for the first time seeks to obtain information from Dr. Petrylak, and he wishes to obtain the information outside of plaintiffs presence. This court is not convinced that it should grant a qualified protective order when Dr. Lizza had a full and fair opportunity to obtain any and all information that he needed during discovery but failed to do so. This court will not approve of forgoing use of traditional discovery devices, which allow for disclosure of medical information under judicial supervision, in favor of eve-of-trial informal procedures that would entirely exclude a party — a treating physician’s patient or patient’s representative no less — from obtaining potentially critical relevant information that is imparted to the opposing party.
Dr. Lizza has not explained how the information sought here is necessary for “preparation for trial” as distinct from information that would have been available and should have been obtained during the period for disclosure. Indeed, all disclosure is intended to “assist preparation for trial.” (See, Allen v Crowell-Collier Publ. Co., 21 NY2d at 406.)
This court will not sanction a post-note-of-issue request to obtain information from a witness who was never even deposed. Doing so would authorize post-note-of-issue discovery without fidelity to the discovery devices, without the consent of both parties and without a showing of the “unusual or unanticipated circumstances” required for obtaining information once the note of issue has been filed. (See, 22 NYCRR 202.21 [d]; Genevit Creations v Gueits Adams & Co., 306 AD2d 142, 142 [1st Dept 2003], lv dismissed in part and denied in part 1 NY3d 617 [2004].) It would improperly allow a party to do indirectly that which it cannot do directly and could unfairly cause surprise at trial.
Accordingly, it is ordered that defendant Eli F. Lizza, M.D.’s motion is denied.