OPINION OF THE COURT
Robert J. Lunn, J.
In this medical malpractice action, defendants move for an order compelling plaintiff to execute and provide to them Health Insurance Portability and Accountability Act (HIPAA) compliant medical authorizations permitting defense counsel to meet with plaintiffs subsequent treating physicians. In the alternative, defendants seek to preclude plaintiff from calling as witnesses at trial any treating physician for which plaintiff has failed to provide defense counsel a medical authorization. Defense counsel requested the medical authorizations from plaintiff in order that they may contact plaintiffs subsequent treating doctors in order to interview them to ascertain if their testimony at trial will be necessary. Plaintiffs attorney has refused to provide signed medical authorizations to defendants’ attorneys, arguing that these types of ex parte discussions with plaintiffs treating physicians are prohibited by recent case law and constitute post-note-of-issue discovery.
It has long been the rule in New York that defense counsel may interview a plaintiffs nonparty subsequent treating doctors after the discovery phase of litigation is completed (see Zimmerman v Jamaica Hosp., 143 AD2d 86 [2d Dept 1988]; Levande v Dines, 153 AD2d 671 [2d Dept 1989]; Tiborsky v Martorella, 188 AD2d 795 [3d Dept 1992]; Luce v State of New York, 266 AD2d 877 [4th Dept 1999]). Plaintiff now argues that the federal HIPAA and two recent trial level decisions have curtailed this practice.
The first decision relied upon by plaintiff in refusing to provide HIPAA compliant medical authorizations is Browne v Horbar (6 Misc 3d 780 [Sup Ct, NY County 2004]). In Browne, which also was a medical malpractice action, defense counsel sought a qualified protective order granting permission for a nonparty subsequent treating doctor to speak to defense counsel upon service of a nonjudicial subpoena. Justice Bransten denied the request holding that “nothing requires the court to authorize what amounts to ex parte, post-note-of-issue discovery” (id. at 782). Apparently, and despite acknowledging that the First and Second Departments had condoned the practice of allowing defense attorneys to *955 interview a plaintiffs subsequent treating physician after the note of issue had been filed in Levande v Dines (153 AD2d 671 [2d Dept 1989]) and Fraylich v Maimonides Hosp. (251 AD2d 251 [1st Dept 1998]), Justice Bransten essentially ignored those holdings, stating, “neither Appellate Division decision analyzes why the ‘sanctity of the physician-patient privilege’ and the interest in insulating treating physicians from ‘improper pressures’ are stronger before the note of issue is filed, but diminish once discovery is complete” (Browne v Horbar at 785). In its stead she requires defense counsel to employ “traditional discovery devices,” i.e., nonparty depositions, if they wish to get any information from one of plaintiff’s prior or subsequent treating physicians. (Id. at 789.)
For the following reasons, this court declines to follow the holding of Browne v Horbar. First, to do so would abrogate the rule established by the Appellate Division departments in Zimmerman v Jamaica Hosp. (143 AD2d 86 [2d Dept 1988]), Levande v Dines (153 AD2d 671 [2d Dept 1989]), Tiborsky v Martorella (188 AD2d 795 [3d Dept 1992]), Luce v State of New York (266 AD2d 877 [4th Dept 1999]) and Fraylich v Maimonides Hosp. (251 AD2d 251 [1st Dept 1998]). This court is obligated to follow the holdings of the Appellate Division until the Court of Appeals renders a contrary decision (People v Towndrow, 187 AD2d 194 [4th Dept 1993]). Second, this court agrees with counsel for Clifton Springs Hospital that requiring the deposition of all nonparty treating doctors would greatly increase the cost and time expended in the discovery phase of medical malpractice cases and other personal injury cases. There is no good reason to make such a change in New York practice when plaintiff’s privacy rights can otherwise be protected. Third, unlike Browne, defense counsel have not in this application sought to use subpoenas or a court order in effecting their conversations with plaintiffs doctors. Use of a carefully worded authorization is far less intimidating. Lastly, and as implicitly acknowledged by Justice Bransten in Browne, HIPAA is not a barrier to the relief sought by defendants.
The second decision relied on by plaintiff is Keshecki v St. Vincent’s Med. Ctr. (5 Misc 3d 539 [Sup Ct, Richmond County 2004]). In Keshecki, Justice Maltese refused to flatly disallow private interviews by defense counsel with plaintiffs nonparty treating doctors as urged here by plaintiff. Rather, in order to comply with HIPAA, the court would allow defense counsel to meet with and interview plaintiffs treating health care providers providing certain conditions were met. These conditions are:
*956 “1. Defense counsel must obtain an authorization separate and apart from any other authorization;
“2. The authorization on its face should state in bold letters that the purpose of the disclosure is not at the request of (the plaintiff) patient;
“3. The purpose should be stated in bold print, ‘The purpose of the information is to assist the defendant in defense of a lawsuit brought by the plaintiff;
“4. The authorization must contain the name and business address of the person to whom the health care provider or hospital employee may give an interview and identify the persons or entities the interviewer is representing (see 45 CFR 164.508 [c] [hi]);
“5. The authorization must conform to all of the core elements and requirements of 45 CFR 164.508 [c]; and
“6. There shall be a separate authorization for each interview and the authorization shall not be combined with a subpoena, which only acts to intimidate the doctor” (.Keshecki v St. Vincent’s Med. Ctr., 5 Misc 3d 539, 544-545).
Additionally, Justice Maltese required in Keshecki that:
“Within five days after the interview, whether in person or on the telephone or by any other manner which technology allows, the defendant must provide the plaintiff with
“1. Any and all written statements, materials or notations and any document obtained from the interviewed health care provider; and “2. Copies of any memoranda, notes, audio or video recording, which records any oral or written statements made of the health care provider.
“The defendant’s counsel need not disclose their observations, conclusions, impressions or analysis of any of the statements” (id. at 545).
Here, defense counsel have agreed to abide by these Keshecki restrictions relative to the authorizations which they now seek.
Contrary to plaintiff’s assertions, HIPAA itself provides no impediment to the relief sought by defendants. The regulations promulgated under HIPAA provide that, under certain conditions, “[a] covered entity may disclose protected health information in the course of any judicial or administrative proceeding” (45 CFR 164.512 [e] [1]). It is debatable whether a private *957 interview against plaintiff’s wishes with his or her treating physicians constitutes a “judicial or administrative proceeding” sufficient to allow the interview to take place absent an express authorization by the patient. However, in order to foster the truth seeking function of a trial and in order to ensure fundamental fairness and a level playing field, a plaintiff should not be allowed to simply refuse to provide an appropriate authorization to defendants yet seek to interview these same health care providers for potential trial testimony. As stated in Tiborsky v Martorella (188 AD2d 795, 797 [1992]), “no party has a proprietary interest in any evidence, and . . . absent unfair prejudice each party has the right to marshall, and the jury has the right to hear, the testimony that best supports each position.”
It is for these reasons that this court agrees that the conditions placed upon providing an authorization set forth in Keshecki v St. Vincent’s Med. Ctr. (5 Misc 3d 539), including the post-interview disclosure to plaintiff of any written materials, must be followed in this case. Also, contrary to the suggestion of plaintiff’s attorney, Keshecki does not require that defense counsel provide to plaintiff a written summary of their conversations with the treating physicians. Rather, Keshecki was limited to disseminating to plaintiff any statements or direct quotations made by the doctor to defense counsel and recorded by any means. Defendants’ counsel in this case shall also be under the same obligation to disclose to plaintiff within 24 hours of obtaining the same any recorded statements made by the doctors to them in the course of the interview. This requirement shall also be reciprocally imposed on plaintiffs counsel relative to any ex parte interviews which he may conduct or have conducted.
Additionally, and to be clear, this court does not read Keshecki as requiring that plaintiffs counsel be notified as to the time and place of the interview so that he or she could be in attendance. This court does not hold that this is required in this case. Finally, in addition to the before listed conditions, any authorization shall be specifically and expressly limited to disclosure of the medical conditions and their sequelae which are at issue in this lawsuit. The authorization shall also conspicuously indicate that the interview is voluntary, rather than mandatory, on the doctor’s part.
In summary, defendants’ motions are granted.