[825 NYS2d 738]

Manuel Arons et al., Appellants-Respondents, v Robert Jut-kowitz et al., Respondents-Appellants, et al., Defendant.

Second Department, December 5, 2006

## APPEARANCES OF COUNSEL

*Philip J. Dinhofer, LLC*, New York City, for appellants-respondents.

*Vaslas Lepowsky Hauss & Danke, LLP*, Great Neck (*Mauro, Goldberg & Lilling, LLP [Kenneth Mauro, Barbara D. Goldberg* and *Matthew W. Naparty]* of counsel), for Robert Fulop, respondent-appellant.

*Amabile & Erman, P.C.*, Staten Island (*Flutra Limani* of counsel), for Robert Jutkowitz, respondent-appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, New York City (*Michael J. Gudzy* of counsel), for Staten Island University Hospital and others, respondent-appellants.

## OPINION OF THE COURT

Adams, J.P.

The appeal in this action to recover damages for medical malpractice and wrongful death, etc., presents an issue of first impression regarding the interplay of the federal Health Insurance Portability and Accountability Act of 1996 (42 USC § 1320d *et seq.* [hereinafter HIPAA]) and the defense bar's informal practice of privately interviewing plaintiffs' nonparty treating physicians after a note of issue has been filed. For the reasons

stated below, we hold that the Supreme Court erred in granting the defendants' motion to direct the plaintiffs to execute HIPAA-compliant authorizations which permit defense counsel to conduct such ex parte interviews. We therefore modify the order accordingly.

The plaintiffs commenced this action in December of 1998. They allege, inter alia, that the defendants Dr. Robert Jutkowitz and Dr. Robert Fulop failed to timely diagnose and inform the plaintiffs' decedent, Phyllis Arons, that she suffered from hydrocephalus. An amended verified complaint was served in or about January of 1999, which added claims against, among others, the defendants Staten Island University Hospital (hereinafter the Hospital), William Gael, "John Doe" Mitnick, and "Richard Roe" Carlstrom. Discovery ensued and a note of issue was filed on or about February 6, 2003.

After the note of issue was filed, the plaintiffs declined to execute authorizations which would, pursuant to HIPAA, permit defense counsel to informally and privately interview nonparty treating physicians who rendered care to the decedent related to this action. Following the plaintiffs' refusal to execute such authorizations, Fulop moved to compel their production, and the defendants Jutkowitz, Gael, the Hospital, Mitnick, and Carlstrom joined in the motion. The Supreme Court granted the motion and directed the plaintiffs to provide HIPAA-compliant authorizations permitting such interviews.

It is well settled that a plaintiff who commences a medical malpractice action waives the physician-patient privilege with respect to those physical or mental conditions which he or she affirmatively places in issue in the lawsuit (*see Koump v Smith*, 25 NY2d 287, 294 [1969]; *Dillenbeck v Hess*, 73 NY2d 278, 287 [1989]). As a result of the waiver, a defendant in such an action is entitled to disclosure regarding the relevant physical or mental condition at issue. In order to obtain this information, a defendant may therefore resort to the discovery devices provided by CPLR article 31 and the Uniform Rules for the New York State Trial Courts (hereinafter Uniform Rules) (*see Stoller v Moo Young Jun*, 118 AD2d 637 [1986]). For example, CPLR 3121 (a) contains a provision requiring a plaintiff to provide duly-executed and acknowledged written authorizations for the release of pertinent medical records (*see Cynthia B. v New Rochelle Hosp. Med. Ctr.*, 60 NY2d 452, 456-457 [1983]; *see also* 22 NYCRR 202.17 [b] [2]). Moreover, upon issuance of a subpoena, a defendant may depose a plaintiff's nonparty treating physician pursuant to CPLR 3106 (b).

Notably, however, neither CPLR article 31 nor the Uniform Rules include a provision authorizing defense counsel to meet privately with a plaintiff's treating physician. Moreover, unlike the production of medical reports and hospital records, there is no statutory or regulatory authority which requires a plaintiff to execute authorizations permitting such ex parte interviews between their treating physicians and defense counsel. In the absence of such authority, or the plaintiff's consent, it has long been the rule that defense counsel are prohibited from conducting such private interviews during discovery (*see Stoller v Moo Young Jun, supra*; *Brevetti v Roth*, 114 AD2d 877 [1985]; *Anker v Brodnitz*, 98 Misc 2d 148, 154 [1979], *affd* 73 AD2d 589 [1979]; *see also Feretich v Parsons Hosp.*, 88 AD2d 903 [1982]; *Cwick v City of Rochester*, 54 AD2d 1078 [1976]). These limits on disclosure are imposed "not because of the physician-patient privilege, which is generally waived by bringing a malpractice action, but by the very design of the specific disclosure devices available in CPLR article 31" (*Feretich v Parsons Hosp.*, 88 AD2d at 904).

The rule prohibiting private meetings between defense counsel and plaintiffs' treating physicians was first articulated in *Anker v Brodnitz (supra)*. Subsequent cases addressed the issue of whether a treating physician's testimony at trial should be precluded on the ground that defense counsel had private discussions with him or her *after* the note of issue was filed. This Court has held that the treating physician's testimony should not be precluded on such basis (*see Levande v Dines*, 153 AD2d 671 [1989]; *Zimmerman v Jamaica Hosp.*, 143 AD2d 86 [1988]; *see also Luce v State of New York*, 266 AD2d 877 [1999]; *Fraylich v Maimonides Hosp.*, 251 AD2d 251 [1998]; *Tiborsky v Martorella*, 188 AD2d 795 [1992]), and since those rulings, it appears that the defense bar has adopted the practice of regularly conducting such post-note of issue ex parte meetings (*see* Thomas A. Moore and Matthew Gaier, Medical Malpractice: *Ex-Parte Interviews With Treating Physicians*, NYLJ, July 6, 2004, at 3, col 1).

However, we did not declare that defense counsel have a right to such informal, post-note of issue interviews, nor did we require plaintiffs to consent to them. Rather, we merely held, under the circumstances, that the treating physician's unique and highly relevant testimony would not be precluded (*see Levande v Dines, supra*; *Zimmerman v Jamaica Hosp., supra*). "This is in keeping with the general rule that no party has a

proprietary interest in any evidence, and that absent unfair prejudice each party has the right to marshall, and the jury has the right to hear, the testimony that best supports each position" (*Tiborsky v Martorella, supra* at 797). The federal government's enactment of HIPAA does not alter this precedent despite the practical obstacles it now imposes for defense counsel who seek such private interviews (*see* 45 CFR 164.512 [e]; *Northwestern Mem. Hosp. v Ashcroft*, 362 F3d 923 [2004]).

In 1996, Congress enacted HIPAA in order to further the federal goals of increased access to health care and to improve the efficiency and effectiveness of the health care system (*see* Pub L No. 104-191, 110 US Stat 1936). During the legislative process, individual patient privacy became an increasing concern due to innovations in technology with respect to information sharing (*see* Tamela J. White and Charlotte A. Hoffman, *The Privacy Standards Under the Health Insurance Portability and Accountability Act: A Practical Guide to Promote Order and Avoid Potential Chaos*, 106 W Va L Rev 709, 712-713 [2004]). To address these concerns about patient privacy, Congress delegated to the Secretary of the Department of Health and Human Services (hereinafter the DHHS) the task of adopting national standards "to ensure the integrity and confidentiality of the information" (42 USC § 1320d-2 [d] [2] [A]; Standards for Privacy of Individually Identifiable Health Information, 65 Fed Reg 82462 [2000]).

Pursuant to this congressional mandate, the DHHS implemented its privacy rule in 2003 (*see* 45 CFR parts 160, 164). The privacy rule controls the "[u]ses and disclosures of protected health information" by "covered entit[ies]" (*see* 45 CFR 164.502). Covered entities, including health care providers such as treating physicians, must develop policies, implement procedures, and maintain compliance with the privacy rule to ensure against unauthorized disclosure of protected health information (*see* 45 CFR 164.530). Without such compliance, they face penalties in the form of fines and even imprisonment (*see* 42 USC §§ 1320d-5, 1320d-6).

The privacy rule authorizes a covered entity to disclose protected health information under an enumerated set of circumstances (*see* 45 CFR 164.502 [a] [1]). As relevant here, disclosure is permitted pursuant to and in compliance with a valid authorization as executed by the patient (*see* 45 CFR 164.502 [a] [1] [iv]; 164.508). However, the patient's authorization is not necessary if the covered entity is disclosing protected

health information in response to a court order, a subpoena, a discovery request, or "other lawful process" (*see* 45 CFR 164.512 [e] [1] [i], [ii]). If a subpoena or discovery request is not accompanied by an order of the court, the covered entity must receive "satisfactory assurances" (45 CFR 164.512 [e] [1] [iii]) from the party seeking the information that (1) reasonable efforts have been made to ensure that the individual who is the subject of the information has been notified of the request or, (2) reasonable efforts have been made to secure a qualified protective order for the information (*see* 45 CFR 164.512 [e]). If these assurances are not given, the health care entity must itself make reasonable efforts to provide notice or to seek a qualified protective order (*see id.*).

In light of these provisions of the privacy rule, defense counsel have faced a practical dilemma in attempting to privately speak with plaintiffs' nonparty treating physicians after a note of issue has been filed. "Specifically, it appears that treating physicians are requiring either written authorizations signed by the plaintiff which comply with HIPAA and which permit oral communications, or a court order authorizing such oral communications which likewise comply with HIPAA" (*Holzle v Healthcare Servs. Group, Inc.*, 7 Misc 3d 1027[A], 2005 NY Slip Op 50770[U], *5 [2005]). In other words, since the enactment of HIPAA, defense counsel's attempts to privately speak with nonparty treating physicians have been hindered when plaintiffs will not execute HIPAA-compliant authorizations specifically permitting such communications. Under these circumstances, defendants have moved, as in this case, to compel plaintiffs' execution of such authorizations.

This motion practice has generated a number of lower court decisions regarding whether, and under what circumstances, defense counsel may gain access to nonparty treating physicians for private interviews after a note of issue has been filed (*see Beano v Post*, Sup Ct, Queens County, Mar. 12, 2004, Dollard, J., Index No. 5694/01; *Keshecki v St. Vincent's Med. Ctr.*, 5 Misc 3d 539 [2004]; *O'Neil v Klass*, Sup Ct, Kings County, Oct. 29, 2004, Rosenberg, J., Index No. 3808/02; *Browne v Horbar*, 6 Misc 3d 780 [2004]; *Steele v Clifton Springs Hosp. & Clinic*, 6 Misc 3d 953 [2005]; *Smith v Rafalin*, 6 Misc 3d 1041[A], 2005 NY Slip Op 50385[U] [2005]; *Valli v Viviani*, 7 Misc 3d 1002[A], 2005 NY Slip Op 50409[U] [2005]; *Hitchcock v Suddaby*, 7 Misc 3d 1026[A], 2005 NY Slip Op 50762[U] [2005]; *Holzle v Healthcare Servs. Group, Inc.*, *supra*; *Ottinger v Mausner*, 11 Misc 3d

1070[A], 2006 NY Slip Op 50460[U] [2006]; *Constantino v Cooper*, 12 Misc 3d 1174[A], 2006 NY Slip Op 51215[U] [2006]). These decisions have resolved defendants' motions in a variety of inconsistent ways.

In some cases, the Supreme Court granted the defendants' motions to compel plaintiffs to execute the pertinent authorizations (*see Beano v Post, supra*; *O'Neil v Klass, supra*; *Steele v Clifton Springs Hosp. & Clinic, supra*; *Smith v Rafalin, supra*; *Hitchcock v Suddaby, supra*; *Constantino v Cooper, supra*). Each of these cases attempted to harmonize HIPAA's procedural protections with existing state law by devising specific language for the authorizations and, in some instances, required the disclosure by defense counsel of statements, notes, memoranda, documents, and recordings from the private interviews. In at least one case (*O'Neil v Klass, supra*), the court included a provision which resembled a qualified protective order regarding the information disclosed at any such interview. With these procedural safeguards in place, these courts held that the private, post-note of issue meetings are compliant with HIPAA (*see Beano v Post, supra*; *O'Neil v Klass, supra*; *Steele v Clifton Springs Hosp. & Clinic, supra*; *Smith v Rafalin, supra*; *Hitchcock v Suddaby, supra*; *Constantino v Cooper, supra*).

Alternatively, other courts have denied comparable motions by defendants seeking to compel plaintiffs' execution of HIPAA-compliant authorizations (*see Browne v Horbar, supra*; *Holzle v Healthcare Servs. Group, Inc., supra*; *Ottinger v Mausner, supra*). Although the specific reasoning of each of these courts varies, they share the general notion that our precedent "militates against granting the relief sought by the defendants on these applications, because they call for a direction outside the scope of the discovery authorized by the CPLR or the Uniform Rules" (*see Ottinger v Mausner*, 2006 NY Slip Op 50460[U], *3). We agree.

While courts are empowered to supervise disclosure (*see* CPLR 3104), they must do so in accordance with the Uniform Rules and the provisions of CPLR article 31 which, as previously noted, do not authorize private, ex parte interviews as a disclosure device (*see generally* CPLR 3102 [a]). Rather, compulsion of such unsupervised, private and unrecorded interviews plainly exceeds the ambit of article 31.

Indeed, after the filing of a note of issue, a court's authority to allow additional pretrial disclosure is limited to a party's demonstration of "unusual or unanticipated circumstances" (22

NYCRR 202.21 [d]). In the absence of additional statutory authority, the "courts should not become involved in post-note of issue trial preparation matters and should not dictate to plaintiffs or defense counsel the terms under which interviews with non-party witnesses may be conducted" (*Holzle v Healthcare Servs. Group, Inc.*, 2005 NY Slip Op 50770[U], *8). Conversely, whether, as here, the filing of the note of issue preceded the April 14, 2003, effective date of the privacy rule is plainly a relevant factor for consideration in determining if a defendant has established "unusual or unanticipated circumstances" warranting this additional disclosure (*see Raynor v St. Vincent's Hosp.*, 7 Misc 3d 1031[A], 2005 NY Slip Op 50833[U], *2 [2005]).

Simply stated, Fulop moved, with the support of the other defendants, to compel the plaintiffs to consent to a form of disclosure which is beyond the scope of CPLR article 31 and the Uniform Rules. The relief requested by defense counsel is simply not authorized by statute. Accordingly, the Supreme Court erred in granting the defendants' motion. However, in light of the unsettled nature of the law prior to this decision, we modify the order to deny the defendants' motion with leave to move pursuant to 22 NYCRR 202.21 (d) for permission to conduct additional pretrial discovery relating to the decedent's treating physicians as limited by article 31.

In light of the foregoing, we need not address the defendants' contentions concerning the language of the authorizations and the court's related directive to turn over certain post-interview materials and documents.

Finally, the Supreme Court providently exercised its discretion in denying the plaintiffs' cross motion to strike Fulop's answer due to his alleged spoliation of evidence. As the plaintiffs, in effect, concede, Fulop's loss of the decedent's medical records has not deprived them of the means of establishing a prima facie case against him since they have been able to reconstruct the decedent's chart from alternate sources. The plaintiffs therefore failed to sustain their burden of demonstrating that they would be severely prejudiced by reason of the missing evidence and the Supreme Court providently exercised its discretion in denying their cross motion (*see Riley v ISS Intl. Serv. Sys.*, 304 AD2d 637, 638 [2003]; *Klein v Ford Motor Co.*, 303 AD2d 376, 377-378 [2003]; *Favish v Tepler*, 294 AD2d 396, 397 [2002]; *Chiu Ping Chung v Caravan Coach Co.*, 285 AD2d 621 [2001]). Therefore, the order is modified, on the law, by

deleting the provisions thereof granting the motion of the defendant Robert Fulop, in which the defendants Robert Jutkowitz, William Gael, Staten Island University Hospital, "John Doe" Mitnick, and "Richard Roe" Carlstrom joined, directing the plaintiffs to execute authorizations pursuant to the Health Insurance Portability and Accountability Act of 1996 permitting defense counsel to speak with certain physicians who rendered care to the plaintiffs' decedent relating to claims being made in this action, and substituting therefor a provision denying the motion, with leave to move pursuant to 22 NYCRR 202.21 (d) for permission to conduct additional pretrial discovery relating to the decedent's treating physicians as limited by CPLR article 31; as so modified, the order is affirmed insofar as appealed and cross-appealed from.

RIVERA, SKELOS and LIFSON, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof granting the motion of the defendant Robert Fulop, as joined in by the defendants Robert Jutkowitz, William Gael, Staten Island University Hospital, "John Doe" Mitnick, and "Richard Roe" Carlstrom, directing the plaintiffs to execute authorizations pursuant to the Health Insurance Portability and Accountability Act of 1996 permitting defense counsel to speak with certain physicians who rendered care to the plaintiffs' decedent relating to claims being made in this action, and substituting therefor a provision denying the motion, with leave to move pursuant to 22 NYCRR 202.21 (d) for permission to conduct additional pretrial discovery relating to the decedent's treating physicians as limited by CPLR article 31; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs and disbursements.