NOAH W. COOPER *v.* JOHN F. NOLAN, TREASURER, *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

382

RICHARD S. WEST and NOAH W. COOPER, for complainant, appellant.

R. E. MAIDEN, Solicitor-General and D. B. HARDEMAN, Assistant Attorney-General, for defendants, appellees.

MR. JUSTICE SWIGGART, delivered the opinion of the Court.

The General Assembly of 1929, by the adoption of Senate Joint Resolution Number 37, fixed the hour of noon of Sunday, April 14, 1929, as the time for the final adjournment of the session. On the morning of that day a committee of the Senate reported that it had transmitted the enrolled copy of Senate Bill 257, the general appropriation bill, to the Governor for his signature, pursuant to the Constitution of the State, article 3, section 18. A subsequent entry of the journal recites the return by the Governor of Senate Bill 257 with his approval. The enrolled bill, on file in the office of the Secretary of State as required by the Constitution, contains the signature of the Governor under date April 14, 1929. The journals of the General Assembly recite final adjournment of the session at the time fixed in the joint resolution.

■ Senate Bill 257 was passed by the House of Representatives on April 9, 1929, having previously passed the Senate. No additional legislative action was necessary to its enactment into law save the approval of the Governor. The journal entries of April 14, 1929, were not essential to its validity as a law. *Forrester* v. *Memphis,* 159 Tenn., 16, 15 S. W. (2d), 739.

■ The single question for our determination is, therefore, whether the approval of the Governor, evidenced by his signature affixed to the bill on Sunday, was a constitutional exercise of the power of the Governor, or void as in contravention of the constitution. If the action of the Governor was void, the bill did not become a law, since the General Assembly did not continue in session five days after the bill was transmitted to the Governor. Constitution, article 3, section 18. *Johnson City* v. *Tennessee Eastern Electric Co.,* 133 Tenn., 632, 182 S. W., 587.

■ In granting his approval to a bill passed by the General Assembly, or in withholding it, the Governor acts as a "component part of the legislature," and the power exercised is legislative rather than executive. *Logan* v. *State,* 50 Tenn. (3 Heisk.), 442.

■ It is said that the Governor, by attending his office and exercising his power of approval of the bill, rendered himself individually liable to the penalty imposed by statute upon those who are guilty of "doing or exercising any of the common avocations of life," other than acts of real necessity or charity. Code of 1858, section 1723, Shannon's Code, section 3029. To this we cannot assent. The official exercise of power by the Governor of this state cannot be truly described as a common avocation of life. It is peculiarly uncommon,

and beyond the scope of the statutory definition of the things prohibited.

Article 15, section 8, of the constitution provides: "No person shall in time of peace be required to perform any service to the public on any day set apart by his religion as a day of rest." Article 3, section 18, provides that the Governor shall have five days within which to approve or veto a legislative bill, "Sundays excepted." The two provisions evince a common intent. The Governor is not required to consider his action on a bill on Sunday, and is entitled to hold it for five week days. We do not think the converse can be read into either provision. The constitution does not prohibit a person from performing a service to the public on the day set apart by his religion as a day of rest, if his action in so doing be voluntary. And as to the Governor, the provision is only that Sunday shall not be counted as one of the five days during which he is permitted to hold a legislative bill for his approval or disapproval.

We have said above that the duty of the Governor to approve or disapprove a legislative enactment is not a "common avocation." Neither can the office of a member of the General Assembly be so classified. The work of the General Assembly is not the work of the individual members for their own advantage and benefit, but is a high duty of citizenship performed by the members as the chosen representatives of all the people of the state and in behalf of all. Upon the faithful performance of their duty depend the security and welfare of the people and the continuance of many of their cherished institutions. The very statute here attacked contains provisions for the expenditure of hundreds of thousands of dollars for the charitable support and care of dependent

and unfortunate members of society, as well as for the maintenance of the government itself. While the Constitution contains provisions prohibiting the enforced contribution of a citizen to the public service on a day set apart by his religion, contrary to his conscience, it contains nothing from which it can be inferred that its framers entertained the view that a voluntary performance of a public duty on Sunday would profane the Lord's day or necessarily run counter to the religious convictions of the people of the state. Entertaining the highest conception of the nature of the service of the lawmaker, the framers of the Constitution left the people free, through their chosen representatives in the Legislature, to determine whether and under what circumstances the legislative function should be exercised on Sunday, according to the dictates of their own conscience. In so interpreting the fundamental law, we do not belittle the value of the Sabbath as an institution necessary for the welfare of the people, as held in *Moss v. State,* 131 Tenn., 94, 110, but we emphasize the high office of the lawmaker in the government of a "Christian state," and its wide separation from the "common avocations of man."

Adhering to the usage of the common law the courts of this country have generally held that Sunday is *dies non juridicus;* not a day for judicial proceedings; and that a judicial act performed on Sunday is void. In so holding, however, this court has expressly recognized the power of the Legislature to change the common law in this respect, and to authorize judicial acts on Sunday. *Moss v. State,* 131 Tenn., 94; *Seals v. State,* 157 Tenn., 538, 11 S. W. (2d), 879.

386

■ In restricting the exercise of the judicial power to accord with the usage of the common law, as modified by statute, the courts have recognized that the restriction of official acts of governmental officers on Sunday is a question of public policy and public morals within the control of the legislature. Questions of public policy not determined by the constitution are within the exclusive power of the legislature. "All questions of policy are for the determination of the legislature, and not for the courts, and there is no public policy which prohibits the legislature from doing anything which the Constitution does not prohibit. Hence the courts are not at liberty to declare a law void as in violation of public policy. . . . Where courts intrude into their decrees their opinions on questions of public policy, they in effect constitute the judicial tribunals as lawmaking bodies in usurpation of the powers of the legislature." *Cavender* v. *Hewitt*, 145 Tenn., 471, 476, quoting from Ruling Case Law, vol. 6, pp. 108-109.

■ Senate Joint Resolution Number 37 was adopted by the General Assembly on April 2nd, 1929, and received the approval of the Governor on April 3rd. It designated Sunday, April 14th, 1929, at noon, as the day for the adjournment of the session, reciting that April 14th was the seventy-fifth day of the session and the day contemplated by the constitution for adjournment. The legislature thus expressly designated the particular Sunday as a legislative day, and by necessary implication authorized the Governor to affix his signature to the appropriation bill on that day.

■ This action of the legislature does not evince a purpose to disregard Sunday as a day of rest and an institution of the people, or to hold its sessions on Sun-

day as a general policy. The language of the resolution indicates clearly that the particular session involved here was fortuitous, resulting from the fact that the seventy-fifth day of the session fell on Sunday. While the constitution does not prohibit the continuance of regular sessions beyond the seventy-fifth day, it has been the custom for many years to so limit them. Whether the circumstances recited in the resolution justified the members of the General Assembly in departing from the usual custom on a single occasion is not for our determination, under the authorities above cited.

 We agree with the conclusion of the learned chancellor that no provision of the constitution, either expressed or implied, was violated in the enactment of the statute involved, and his decree dismissing the suit will be affirmed. *Ex Parte Seward,* 299 Mo., 385, 253 S. W., 356, 31 A. L. R., 665.