Martin BAYNE, Plaintiff,

v.

Shawanda M. PROVOST, Stephen A. Meehan et al., Defendants.

No. 1:04–CV–44 TJM/RFT.

United States District Court, N.D. New York.

Jan. 25, 2005.

Kevin S. Mednick, Bendall, Mednick Law Firm, Schenectady, NY, for Plaintiff.

Nelson Sheingold, Office of Attorney General, Albany, NY, for Defendants.

## DECISION AND ORDER

TREECE, United States Magistrate Judge.

The pressing issue before this Court is whether the Defendants can be restricted from conducting an *ex parte* interview of the Plaintiff's health and medical providers by virtue of a limited or restrictive HIPAA[1] medical authorization. The parties have submitted to this Court letter-memorandum setting forth their respective positions addressing whether the Plaintiff has the authority to limit Defendants' access to health and medical providers, or conversely, whether the Defendants can have, in addition to receiving written medical records, *ex parte* interviews with the Plaintiff's health and medical providers, but more specifically nurse practitioner, Linda Cardamone.[2]

### FACTS

The Complaint in this action alleges a violation of Mr. Bayne's civil rights under 42 U.S.C. § 1983, as well as a second cause of action for false imprisonment. Dkt. No. 1, Compl. The allegations are as follows: Martin Bayne suffers from Parkinson's disease and requires home nursing. One of his home nurses was Linda Cardamone, a nonparty to this action. On January 15, 2003, Ms. Cardamone initially performed her nursing duties at Bayne's residence but later in the day spoke with him by phone. Based upon that conversation, Ms. Cardamone made another phone call seeking emergency assistance on the grounds that Mr. Bayne threatened to commit suicide. Defendants Provost and Meehan, New York State Troopers, responded to the emergency call, took Bayne from his home, purportedly without conducting an investigation or a mental health determination, and placed him in an ambulance, which took him to Saratoga Hospital for a

---

1. Congress enacted the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104–191, 110 Stat.1936. With regards to this litigation, the relevant sections of this Act can be found in 42 U.S.C. §§ 1320d & 1320d–2 through d–7 and the corresponding Rules and Regulations, 45 C.F.R. § 164.512.

2. The parties submitted the following for review: (1) for the Plaintiff—Kevin Mednick, Esq., letter-memorandum, dated December 29, 2004, with exhibits (Dkt. No. 16); and (2) for the Defendants—Nelson R. Sheingold, Esq., letter-memorandum, dated December 30, 2004 (Dkt. No. 17). The parties have declined the Court's invitation to engage in oral argument.

mental health evaluation. The next day, Mr. Bayne was released from the hospital with no finding of suicidal ideation. Compl. at ¶¶ 10–16.

As a part of discovery, Defendants submitted to the Plaintiff a HIPAA waiver so that they may have access to all of Bayne's medical records. *See* Dkt. No. 16, Ex. 1. Rather than executing the authorization provided by the Defendants, the Plaintiff provided a limited medical authorization which states in part: "This authorization is for written records ONLY. You are NOT authorized to discuss any matters relating to my medical condition, course of treatment or prognosis." Dkt. No. 17 at p. 1. Of course, Defendants object to this limited medical authorization. It appears that Defendants wish to have a less restrictive medical authorization so that they may have *ex parte* interviews with medical providers, but more so with Linda Carmadone, who is both a critical fact witness and a health care provider. Dkt. Nos. 16 and 17. Since the parties are unable to resolve this issue, notwithstanding their good faith efforts, the parties jointly seek court intervention. *Id.*

## DISCUSSION

There appears to be no disagreement between the parties that, currently, medical authorizations, in and of themselves, are controlled by HIPAA. Where they disagree, however, pertains mostly on what law should be utilized in determining HIPAA's application to these circumstances. To be more specific, the issues are whether federal or state law controls the issuance of HIPAA medical authorizations and whether HIPAA permits or restricts *ex parte* interviews of health and medical providers.

The critical statutory provisions relative to this discussion may be found in 42. U.S.C. §§ 1320d & d–2 through d–7. These provisions set the standards by which certain medical or health information may be transmitted from health care providers, clearinghouses, health plans, employers, life insurers, schools, and the like to others. *See* 42 U.S.C. § 1320d (definitions). Health information means "any information, whether oral or recorded in any form or medium, [which may include electronic] that is created or received by health care provider[s] . . . and relates to the past, present, or future physical or mental health or condition of an individual, [or] the provision of health care to an individual." 42 U.S.C. § 1320d(4); *see also* 42 U.S.C. § 1320d(6) (regarding individually identifiable health information).[3] Further, 42 U.S.C. § 1320d–2 directs the Secretary of Health and Human Services ("HHS") to promulgate rules and regulations for transactions of such health information and to establish regulations that will safeguard and protect the privacy of the medical records. To that extent, in 2001, HHS had indeed promulgated rules and regulations to secure the privacy of an individual's identifiable health information and to control their release and transmittal by covered entities. 45 C.F.R. §§ 164.500–535 & 164.512; *Nat'l Abortion Fed'n v. Ashcroft*, 2004 WL 555701, at \*2 (S.D.N.Y. Mar. 19, 2004) (citing, *inter alia*, 45 C.F.R. §§ 164.500–535). With regard to § 164.512, these rules and regulations set forth how health information may be used and disclosed "for which an authorization or opportunity to agree or object is not required." *Id.*[4]

---

**3.** This statutory provision adds to the definition of health information those records that can identify the individual to whom the records pertain. 42 U.S.C. §§ 1320d(6)(B)(i) and (ii).

**4.** The preamble to this rule and regulation definitively states that

Judicial and administrative proceedings are forums in which health information may be disclosed or disseminated pursuant to 45 C.F.R. § 164.512. *See, supra,* 2004 WL 555701, *3 n. 4. The pertinent rule and regulation regarding the standard for disclosure of health information for judicial proceedings reads as follows:

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) **In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:**

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such

party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e) (emphasis added).

 Thus, under this specific rule and regulation, it is evidently denudate that a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase. *Id.* at § 164.512(e)(1)(ii). And, § 164.512(e) unequivocally permits health care providers and other covered entities to disclose protected health information without patient consent in judicial proceedings. *Northwestern Mem. Hosp. v. Ashcroft,* 362 F.3d 923, 925 (7th Cir.2004); *Nat'l Abortion Fed'n v. Ashcroft,* 2004 WL 555701, at *2.

In terms of solidifying further protection of these medical records, the rules and regulations advise us that they "shall not supercede a contrary provision of State law, if the provision of State law imposes requirements, standards, or implementation specifications that are more stringent than the requirements, standards, or implementation specifications imposed under the regulation." *See* 45 C.F.R. § 160.203(b); *see also* 42 U.S.C. § 1320d–7. A standard is "more stringent" if it "provides greater privacy protection for the individual who is the subject of the individually identifiable health information" than the standard set forth in the

[a] covered entity may use or disclose protected health information **without the written authorization of the individual,** as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered enti-

ty's information and the individual's agreement may be given orally.
45 C.F.R. § 164.512 (emphasis added).
 Sections 164.508 and 164.510, on the other hand, require a written authorization for those events and circumstances set forth therein. Neither of these sections refers to "judicial proceeding" as we find referred to in § 164.512. Thus we can presume that they have no applicability to litigation or the issues confronted in our case.

rules and regulations. 45 C.F.R. § 160.202(6) (as cited in *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 924 (7th Cir.2004)). With all of this being noted, we now turn to the issue whether New York law has been preempted by HIPAA.

The Plaintiff argues that New York law controls in determining whether *ex parte* interviews of medical providers should be allowed, to wit, New York law is both contrary to HIPAA and its requirements are more stringent than federal law. The first prong of his argument stems from the claim that state law privileges and their related substantive law, which in his view is more stringent than HIPAA, precludes *ex parte* discussions. The second prong of his position is that if state law privileges are not applicable, then other state common law and litigation practice and policy are far more exacting than HIPAA and they too foreclose *ex parte* communications. That being so, the Plaintiff claims that his HIPAA authorization restricting the disclosure of his health information to written records was appropriate and should stand. However, considering the two prongs independently or collectively, we do not accept the Plaintiff's premises. First, we will address the Plaintiff's state privilege contention.

The Plaintiff asserts that since there is a state cause of action in this litigation, that being false imprisonment, Federal Rule of Evidence 501, provides the salutary rule. This Rule of Evidence states in part that "in a civil action and proceedings, in which State law supplies the rule of the decision, the privileges of the witness ... shall be determined in accordance with State law." FED. R. EVID. 501. As such, if state law is controlling in this case, the Plaintiff asserts that we must default to state law when determining the scope or parameter of discovery of medical information. Con-

currently, it is also the Plaintiff's view, based upon the same argument, that New York has a more stringent standard in terms of protecting an individual's identifiable health information and, therefore, state law is dispositive as to the manner in which this sensitive information is disclosed, not federal law. Hence, we must ascertain whether this position is accurate.

Rule 501 does not cloak this case nor Plaintiff's health information with state privileges as the Plaintiff has suggested. Indeed, even if there were any physician-patient privileges that may be applicable here, they have been waived by the commencement of this action. By commencing this action and seeking damages for his medical injuries, Bayne has placed his relevant medical condition at issue. *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 634–35 (S.D.N.Y.1997). Next, this litigation, in the truest sense of the word, is a federal case wherein a violation of the Plaintiff's constitutional and civil rights is alleged. The predominate cause of action in this case is a 42 U.S.C. § 1983 action, with the state cause of action of false imprisonment merely pendent. In all respects, this instant case, by virtue of the § 1983 action, is a federal question in which both federal statutory law and federal common law govern. When the evidence sought is relevant to both the federal and state claims, several United States Courts of Appeals have held consistently that the asserted privileges are governed by the principles of federal law. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.1987) (citing, *e.g.*, *Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir.1982) and *Mem. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981)); *see also Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d at 926 (The Seventh Circuit Court of Appeals ruled that the

evidentiary privileges that are applicable to federal-question suits "are given not by state law but by federal law, ... which does not recognize a physician-patient (or hospital-patient) privilege. [Rather,] Rule 501 ... makes federal common law the source of any privileges in federal-question suits."). It has also been made abundantly clear that "[i]t is ... intended that the Federal Law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." *von Bulow*, at 141 (citing S.Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7051, 7059 n. 16); *see also Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975). Therefore, Plaintiff's interpretation of Rule 501's relevance to this case and his reliance on corresponding state court decisions are misplaced.

Turning to New York state common law that has addressed, to some degree, the issue before us, that is, whether *ex parte* interviews of health providers can occur prior to trial, the Plaintiff asserts such types of interviews are either prohibited, or, at least, are not authorized in New York. *Anker v. Brodnitz*, 98 Misc.2d 148, 413 N.Y.S.2d 582, *aff'd* 73 A.D.2d 589, 422 N.Y.S.2d 887 (2nd Dep't 1979), *lv. dismissed* 51 N.Y.2d 703, 432 N.Y.S.2d 1026, 411 N.E.2d 795 (1980); *see also Tiborsky v. Martorella*, 188 A.D.2d 795, 591 N.Y.S.2d 547 (3d Dep't 1992) (observing that *Anker* is limited to *ex parte* interviews during the post-note of issue stage of medical malpractice cases); *Levande v. Dines*, 153 A.D.2d 671, 544 N.Y.S.2d 864 (2d Dep't 1989) (same as *Tiborsky* ); *Fraylich* ex rel. *Fraylich v. Maimonides Hosp.*, 251 A.D.2d 251, 674 N.Y.S.2d 668 (1st Dep't 1998) (finding accord with the Second and Third Departments that in medical malpractice cases *ex parte* interviews of health providers do not occur until the note of issue is filed).

This Court cannot state for certain that throughout New York, its legal history, or litigation practice, there is a bright line rule that in all cases *ex parte* interviews of medical providers are prohibited. In some respect, at least in terms of three of the four appellate divisions within the state, this rule seems to apply solely to medical malpractice cases. As another example, in other New York state decisions, though not at the appellate level, the courts therein recognize that the rules regarding *ex parte* interviews of health providers have changed due to the enactment of HIPAA. *Keshecki v. St. Vincent's Med. Ctr.*, 5 Misc.3d 539, 546, 785 N.Y.S.2d 300 (N.Y.Sup.Ct.2004) ("It is clear to this court that HIPAA and its regulations have changed the rules regarding *ex parte* communications with a plaintiff's treating health care providers."); *see also Browne ex rel. Estate of Browne v. Horbar*, 2004 WL 2827657, at *5 (N.Y.Sup. Nov. 17, 2004) (citing *Keshecki v. St. Vincent's Med. Ctr.* for the proposition that "HIPAA—a federal statute that preempts state law—'changed the rules regarding *ex-parte* communications with a plaintiff's treating health care providers.' "). These cases, however, do not make a distinction between pre-note of issue or post-note of issue *ex parte* interviews nor do they in terms of medical malpractice cases and other types of personal injury actions. Moreover, such a delineation for federal litigation, which does not have a similar two tier approach to litigation before trial, has no bearing or relevance. Yet with this relative ambiguity on whether *ex parte* interviews are prohibited in New York under every circumstance, we can observe with relative certainty that New York does not have a more stringent standard as it may relate to the disclosure of health information. HIPAA may, as well, prohibit *ex parte* interviews without referring to

state law. In this respect, HIPAA appears to preempt or trump New York law on the rules which will guide us on this issue. To establish this point, we now turn to the HIPAA rules and regulations themselves.

Absent within the four corners of the relevant rules and regulations and the enabling statute is any mention of an *ex parte interview* of a health provider, such as whether to prescribe or proscribe such actions, unless we refer to 42 U.S.C. § 1320d(4) as providing a definitive address to the matter. Section 1320d(4) states that "health information means any information, whether **oral** or recorded in any form or medium." (emphasis added). Presumably, the only reasonable method to gain health information that remains oral and not reduced to writing is by an interview. But this presumption is lacking in addressing an entire regulatory scheme. It may be specific but not categorical enough to provide a thoughtful and substantive direction on the release of such sensitive information, and, thus, is not fully satisfying in terms of providing a definitive answer on this matter.

Since this is a recently enacted legislation, there are few federal precedents to assist us in our analysis. Two precedents that appear to be directly on point are not completely in unison in their rulings nor instructions, yet the Court finds their analysis persuasive overall. United States Magistrate Day in the District of Maryland, in a matter of first impression, found initially that the matter of *ex parte* discussions was controlled by HIPAA and not state law and "that in the absence of strict compliance with HIPAA such discussions are prohibited." *Law v. Zuckerman*, 307 F.Supp.2d 705, 707, 711 (D.Md.2004) ("Since Maryland law fails to satisfy the 'more stringent' standard, federal law is controlling and all *ex parte* communications must be conducted in accordance with the procedures set forth in HIPAA."). This would suggest that under the "proper procedures" as established by HIPAA *ex parte* communications would be allowed. On the other hand, in a slightly different permutation on the matter, the court in *Crenshaw v. Mony Life Ins. Co.*, 318 F.Supp.2d 1015, 1029 (S.D.Cal.2004), when addressing an attorney's *ex parte* communication with the opposing party's personal physician, found HIPAA does not authorize *ex parte* contacts with healthcare providers. Essentially, in that case, the court found that defense counsel's *ex parte* communication with the doctor fell beyond "HIPAA's requirement that confidential medical information be disclosed pursuant to a court order, subpoena, or discovery request." [5] *Id.* at 1029 (citing 45 C.F.R. §§ 160.103, 164.512(e)(1)(i), and (e)(1)(ii)(A) and (B)). Yet, we may still discern an exception to the bright line rule of no *ex parte* discussions when we read further into United States Magistrate Judge Brooks' decision in *Crenshaw:*

> Under HIPAA, disclosure is permitted, *inter alia*, pursuant to a court order,

---

**5.** In our case, Defendants argue that HIPAA does not inhibit such interviews and, to support that proposition, they rely upon *South Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 353–54 (4th Cir.2003). We find the Defendants' reliance on this case is clearly misplaced. The Fourth Circuit, in this case, was addressing the question whether HIPAA only regulated the electronic transmittal of medical information. The Circuit ruled that HIPAA was much broader than that and covered all forms of information. *Id.* Therefore, to extrapolate from such a narrow ruling that *ex parte* interviews are permitted by HIPAA, even though there is no direct reference to such types of interviews, is a tremendous leap in logic. Furthermore, there is a statutory scheme which strongly suggests that *ex parte* interviews were not intended without court intervention. *See, infra,* pp. 15–18, and note 7.

subpoena, or discovery request when the healthcare provider "receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order." 45 C.F.R. § 164.512(1)(e)(ii)(b). The protective order must prohibit "using or disclosing the protected health information for any purpose other than the litigation." and "[r]equire [ ] the return to the [physician] or destruction of the protected health information ... at the end of the litigation or proceeding." 45 C.F.R. § 164.512(1)(e)(v).

*Id.* at 1029.

■ Relying upon this decision we may reasonably infer that if a qualified protective order, consistent with §§ 164.512(1)(e)(ii)(B), (v)(A) and (B), was in place then an *ex parte* discussion with the health provider would be appropriate. In a similar vein, which this Court also finds persuasive, several New York cases

have similarly ruled that HIPAA does not permit *ex parte* discussions without complying with a number of restrictions that seem to incorporate the features of a qualified protective order as described in the rules and regulations. *See Keshecki v. St. Vincent's Med. Ctr.,* 5 Misc.3d at 544–46, 785 N.Y.S.2d 300; [6] *Browne ex rel. Estate of Browne v. Horbar,* 2004 WL 2827657, at *5–6; *Nat'l Abortion Fed'n v. Ashcroft,* 2004 WL 555701, at *6 (explaining that these regulations permit disclosure of health information without patient consent pursuant to a qualified protective order); *see also, supra,* 2004 WL 555701, *3 n. 4. By all accounts then, we find that HIPAA provides the more stringent standards to protect the Plaintiff in this federal case and, therefore, preempts New York law.

Nonetheless, we are not quite prepared to say that there are no built-in protections within § 164.512(e) of which the Plaintiff, himself, can invoke to limit his medical

**6.** The *Keshecki* court held that in order to comply with the federal HIPAA privacy rules a defendant's counsel who wishes to interview a plaintiff's patient's [sic] treating health care provider must comply with the following provisions:

1. Defense counsel must obtain an authorization separate and apart from any other authorization;

2. The authorization on its face should state in bold letters that the purpose of the disclosure is *not* at the request of (the plaintiff) patient;

3. The purpose should be stated in bold print, "The purpose of the information is to assist the defendant in defense of a lawsuit brought by the plaintiff";

4. The authorization must contain the name and business address of the person to whom the health care provider or hospital employee may give an interview and identify the persons or entities the interviewer is representing (*see* 45 C.F.R. 164.508[c][1][iii] );

5. The authorization must conform to all of the core elements and requirements of 45 C.F.R. 164.508(c); and

6. There shall be a separate authorization for each interview and the authorization shall not be combined with a subpoena, which only acts to intimidate the doctor. Within five days after the interview, whether in person or on the telephone or by any other manner which technology allows, the defendant must provide the plaintiff with

1. Any and all written statements, materials or notations and any document obtained from the interviewed health care provider; and

2. Copies of any memoranda, notes, audio or video recording, which records any oral or written statements made of the health care provider. The defendant's counsel need not disclose their observations, conclusions, impressions or analysis of any of the statements.

*Keshecki v. St. Vincent's Med. Ctr.,* 5 Misc.3d at 544–45, 785 N.Y.S.2d 300. As comprehensive as this list of mandates may be, this Court does not see a need to implement all of these protections.

records and minimize the exposure of *ex parte* interviews. When there are discovery requests not accompanied by court order, a covered entity may disclose health information after receiving satisfactory assurances that proper notice has been given to the protected person, or the party attempting to secure the health information has secured a qualified protective order either by agreement or court involvement. 45 C.F.R. §§ 164.512(e)(1)(ii)(A) & (B). But it appears that there is a burden placed upon the party with the protected records to file an objection with the court if he or she believes that they have not received proper notice of the request. Further, pursuant to these regulations, the covered entity may require from the person seeking these records that they have a qualified protective order whether by stipulation or an order from the court. 45 C.F.R. §§ 164.512(e)(1)(iv) & (v).[7]

Although Plaintiff's analysis may not be directly on point, and the restrictions asserted within the medical authorization may have been premised upon an erroneous postulation of the applicable law, even superfluous, the result would be the same, at least on its face, that is, an *ex parte* interview of health care providers under HIPAA with just a bare medical authorization, and nothing more, may not be sufficient. The applicable rules and regulations require greater assurances than what

can be provided by a *pro forma* medical authorization, an authorization this Plaintiff is unwilling to extend. *See* 45 C.F.R. §§ 164.512(e)(1)(iii) & (v). But here, Ms. Cardamone's role in this litigation is not in the sole context of just a health care provider. Ostensibly, the Complaint reveals that she employed certain knowledge that she had garnered about the Plaintiff's medical condition to make the judgment to seek emergency assistance, and, as we know, that call led to other events and occurrences which have triggered this lawsuit. To shield Ms. Cardamone from a proper *ex parte* interview by the Defendants, by virtue of standing on the strict interpretation of HIPAA as precluding such types of interviews, would be tantamount to denying the Defendants of their right to the effective assistance of counsel. *See IBM v. Edelstein*, 526 F.2d 37 (2d Cir.1975). As we have discussed, HIPAA does create safety valves that would both permit the disclosure of such medical information and not abandon some control over this information. It would be fitting within the context of this case to have the Defendants secure a qualified protective order with specific requirements that may satisfy HIPAA and still give the Defendants an opportunity to conduct a one-on-one discussion with this critical witness.[8] 45 C.F.R. §§ 164.512(e)(1)(ii)(B) & (v).

7. We emphasize this statutory scheme in a direct response to the Defendants' notion that, since there is no explicit language restricting *ex parte* discussions with medical providers, then there is no inhibition to such interviews at all. Rather, the statute makes clear that the protected party can register an objection with the court, or enter into a qualified protective order, or the medical entity can require a qualified protective order. Under this scheme, in the first instance, it is the qualified protective order which may lend itself to *ex parte* interviews, not conversely.

8. It has been suggested that a deposition of Ms. Cardamone could and would resolve everything. A deposition is not the same as an *ex parte* interview and this Court does not have the authority to limit, control, or nullify the benefits an interview may have over a deposition, and neither should the Plaintiff. The Court has been informed that Ms. Cardamone has an attorney who may well prevent an interview, but that is another right independent of the Plaintiff's rights and should be of little concern to him. If she refuses to be interviewed, a right which she has as a nonparty to this action, then the Defendants can serve a subpoena upon her and conduct a

■ Prior to this Decision and Order, the Defendants have not sought to secure a qualified protective order. In the interest of justice, and well within this Court's inherent authority to manage discovery, the Court will consider this entire discussion as a request to secure a qualified protective order in order for the Defendants to exercise the ability to interview Ms. Cardamone on all of the relevant information she may have, including Mr. Bayne's medical conditions, outside the presence of the Plaintiff.

Therefore, based upon all of the foregoing, it is hereby

ORDERED, that the Defendants are granted a Qualified Protective Order and Authorization to interview Ms. Cardamone about the relevant events in this litigation and Mr. Bayne's medical history and condition. The Defendants shall draft for this Court to execute a Qualified Protective Order and Authorization that incorporates the terms of the authorization previously submitted to the Plaintiff, the directions of this Court, and the provisions of 45 C.F.R. §§ 164.512(e)(1)(v)(A) & (B), to wit: (1) the Defendants are prohibited from using or disclosing the protected health information for any purpose other than this litigation; (2) the Defendants are required to either return or destroy the protected information at the end of the litigation; (3) the document shall be captioned Qualified Protective Order and Authorization and shall be used exclusively for the interview of Ms. Cardamone; and (4) there shall be a recitation on the document's face in bold letters that the purpose of the disclosure is not at the request of the patient, however, he has been put on notice of this order, and that the purpose of the information is to assist the Defendants in defense of a

lawsuit brought by the Plaintiff; and it is further

ORDERED, that if the Defendants comply with all of these requirements and eventually choose to call Ms. Cardamone as a witness, they shall not be precluded from conducting subsequent private discussions with Ms. Cardamone in preparation for trial testimony and the contents of such further discussions need not be disclosed; and it is further

ORDERED, that the Defendants shall advise Ms. Cardamone that this Qualified Protective Order and Authorization does not compel her to participate in an interview against her wishes nor to occur outside the presence of her attorney if she wishes to have one present.

SO ORDERED.

---

deposition. FED. R. CIV. P. 45. Or, should events occur as Defendants contemplate, they

should be able to avail themselves of both a deposition and an interview.