# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 19, 2016 Session

## ANGELA CALDWELL, AS POWER OF ATTORNEY F/U/B OF LEATHY M. JOHNSON V. BAPTIST MEMORIAL HOSPITAL, ET AL.

### Appeal from the Circuit Court for Shelby County
No. CT-002843-13      D'Army Bailey, Judge

---

### No. W2015-01076-COA-R10-CV – Filed June 3, 2016

---

In this health care liability action, this Court granted the defendants' application pursuant to Tenn. R. App. P. 10 to address two issues. We have determined that: (1) the Health Insurance Portability and Accountability Act ("HIPAA") does not preempt Tenn. Code Ann. § 29-26-121(f); and (2) the trial court erred in denying the defendants' petition for a qualified protective order pursuant to Tenn. Code Ann. § 29-26-121(f) because it is undisputed that the defendants complied with the procedural requirements of subsection (f), and the plaintiff did not file an objection as permitted under the statute. We, therefore, reverse the trial court's decision and remand for the entry of a qualified protective order.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, and KENNY W. ARMSTRONG, JJ., joined.

Marty R. Phillips and John O. Alexander, IV, Memphis, Tennessee, for appellant Ravi K. Madasu, M.D.

Christopher S. Campbell and Laura S. Martin, Memphis, Tennessee, for appellant Baptist Memorial Hospital.

Kevin O'Neal Baskette and Peter Benjamin Winterburn, Memphis, Tennessee, for appellants Frank Eggers, and Mid-South Imaging and Therapeutics, PA.

Albert C. Harvey and Justin Nicholas Joy, Memphis, Tennessee, for appellants Lance J. Wright and Semmes-Murphey Clinic, P.C.

Herbert H. Slatery, III; Attorney General and Reporter, Andrée S. Blumstein, Solicitor General; Mary M. Bers, Senior Counsel; and Stephanie A. Bergmeyer, Assistant Attorney General, Nashville, Tennessee, for the intervenor-appellee State of Tennessee.

William Bryan Smith, Memphis, Tennessee, for the appellee Angela Caldwell.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Angela Caldwell filed this healthcare liability action on behalf of patient Leathy M. Johnson against multiple healthcare providers on July 3, 2013.[1] In January 2014, defendant Ravi K. Madasu, M.D., filed a petition for a qualified protective order ("QPO") pursuant to Tenn. Code Ann. § 29-26-121(f) to allow "the Defendant and his attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the patient's treating healthcare providers." Ms. Caldwell objected, asserting in part that the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.*, preempted Tenn. Code Ann. § 29-26-121(f). The State of Tennessee intervened pursuant to Tenn. R. Civ. P. 24.01 to defend the validity of the statute under Tenn. Code Ann. § 8-6-109(b)(9). The remaining defendants[2] either filed their own petitions for QPOs or joined in the relief sought in the other defendants' petitions.

A hearing was held on November 7, 2014. Ms. Caldwell acknowledged that the defendants had complied with the procedural requirements of Tenn. Code Ann. § 29-26-121(f). Moreover, she did not argue that the treating healthcare providers named in the defendants' proposed QPOs did "not possess relevant information as defined by the Tennessee Rules of Civil Procedure." Tenn. Code Ann. § 29-26-121(f)(1)(B). Rather, she argued that the statute was preempted by HIPAA and that the court had the inherent authority to craft a remedy that balanced the patient's privacy rights against the defendants' need to conduct discovery.

In an order entered on December 5, 2014, the trial court denied the petitions for QPOs. As an alternative, the court ordered that the defendants be allowed to take "the discovery-only depositions of Patient's treating physicians." The court reasoned:

---

[1] The original defendants in this case were Baptist Memorial Hospital; Southeastern Emergency Physicians, Inc.; Southeastern Emergency Physicians of Memphis, Inc.; Team Health, Inc.; Ravi K. Madasu, M.D.; Semmes-Murphey Clinic, PC; Lance J. Wright, M.D.; Mid-South Imaging & Therapeutics, P.A.; and Frank M. Eggers, M.D.

[2] The remaining defendants, in addition to Dr. Madasu, were Dr. Wright, the Semmes-Murphey Clinic, Dr. Eggers, Mid-South Imaging & Therapeutics, and Baptist Memorial Hospital.

A discovery-only deposition is a less intrusive alternative than an *ex parte* interview and is, therefore, less in conflict with the protections and safeguards contemplated under HIPAA. Furthermore, a discovery-only deposition addresses the Court's due process concerns of ensuring fairness to Plaintiff by reducing the risk that the physician, as well as the Defendants' respective counsel, may not be able to find those lines of demarcation between relevant and appropriate inquiries during an *ex parte* interview. Finally, a discovery-only deposition addresses the Court's fairness concern arising from the fact that Plaintiff has no access to *ex parte* communications with Patient's treating physicians who are also party Defendants[ ] in this matter.

After the trial court denied the defendants' motion for permission to seek an interlocutory appeal, the defendants filed an application with this Court for an extraordinary appeal under Tenn. R. App. P. 10. By order entered on July 15, 2015, this Court granted the application for an extraordinary appeal to address the following issues:

1. Whether the Health Insurance Portability and Accountability Act preempts Tennessee Code Annotated Section 29-26-121(f).

2. Whether the trial court erred in denying the Defendants' Petition for a Qualified Protective Order pursuant to Tennessee Code Annotated § 29-26-121(f) when it is undisputed that (1) Defendants complied with the procedural requirements of subsection (f); and (2) Plaintiff did not file an objection seeking to limit or prohibit the Defendants from conducting the interviews based upon good cause shown that the treating healthcare providers named in Defendants' Petition did not possess relevant information as defined by the Tennessee Rules of Civil Procedure.

STANDARD OF REVIEW

The issues on appeal involve questions of law. Whether a federal law preempts a state law is a question of law and is, therefore, subject to de novo review with no presumption of correctness. *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 55 (Tenn. 2013). Issues of statutory construction also present questions of law. *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

- 3 -

Tennessee law

Tennessee Code Annotated section 29-26-121 was enacted in 2008; subsection (f) was enacted in 2012. 2008 TENN. PUB. ACTS, c. 919, § 1; 2012 TENN. PUB. ACTS, c. 926, § 1. Before we consider the meaning and effect of subsection (f), it is important to consider some prior caselaw. In *Alsip v. Johnson City Medical Center*, 197 S.W.3d 722, 723-24 (Tenn. 2006), the Tennessee Supreme Court held that ex parte communications between defense counsel and non-party treating physicians in medical malpractice lawsuits violated the implied covenant of confidentiality between physicians and patients. The federal district court, in *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 690 (W.D. Tenn. 2010), interpreted HIPAA to "allow defense counsel to conduct *ex parte* interviews with plaintiff's treating physicians after first securing, or attempting to secure, a qualified protective order consistent with the regulations." The court in *Wade* further held that the implied covenant of confidentiality did not apply to a non-party physician who did not render medical treatment to the patient. *Wade*, 922 F. Supp. 2d at 694. Therefore, the defendants were permitted to communicate ex parte with such a physician. *Id.*

Tennessee Code Annotated § 29-26-121(f) allows for the disclosure of protected health care information in ex parte interviews conducted during judicial proceedings as follows:

> (1) Upon the filing of any "healthcare liability action," as defined in § 29-26-101, the named defendant or defendants may petition the court for a qualified protective order allowing the defendant or defendants and their attorneys the right to obtain protected health information during interviews, outside the presence of claimant or claimant's counsel, with the relevant patient's treating "healthcare providers," as defined by § 29-26-101. Such petition shall be granted under the following conditions:
> (A) The petition must identify the treating healthcare provider or providers for whom the defendant or defendants seek a qualified protective order to conduct an interview;
> (B) The claimant may file an objection seeking to limit or prohibit the defendant or defendants or the defendant's or defendants' counsel from conducting the interviews, which may be granted only upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure; and
> (C)(i) The qualified protective order shall expressly limit the dissemination of any protected health information to the litigation pending before the court and require the defendant or defendants who conducted the interview to return to the healthcare provider or destroy any protected health

information obtained in the course of any such interview, including all copies, at the end of the litigation;

(ii) The qualified protective order shall expressly provide that participation in any such interview by a treating healthcare provider is voluntary.

(2) Any disclosure of protected health information by a healthcare provider in response to a court order under this section shall be deemed a permissible disclosure under Tennessee law, any Tennessee statute or rule of common law notwithstanding.

Tenn. Code Ann. § 29-26-121(f) (2015). (Subsection (f)(2) was amended effective April 24, 2015. We cite the previous version of the statute, which applies here).

<u>Preemption</u>

Under the Supremacy Clause of the United States Constitution, the laws of the United States are the supreme law of the land and preempt state laws that interfere with or are contrary to federal law. *Pendleton v. Mills*, 73 S.W.3d 115, 126 (Tenn. Ct. App. 2001); *Ill. Cent. Gulf R.R. Co. v. Tenn. Pub. Serv. Comm'n*, 736 S.W.2d 112, 114 (Tenn. Ct. App. 1987). In preemption analysis, a court "should start with the presumption that Congress does not intent to supplant state law and that the historic police powers of the states are not superseded by the federal act unless preemption was the clear and manifest purpose of Congress." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 605 (Tenn. 2013).

Congress passed HIPAA in 1996, and it took effect in 2003. *Wade*, 99 F. Supp. 2d at 685. HIPAA "governs the dissemination of protected health information." *Id.* The regulations implementing HIPAA contain an express preemption clause: "A standard, requirement, or implementation specification adopted under this subchapter that is *contrary* to a provision of State law preempts the provision of State law." 45 C.F.R. § 160.203 (emphasis added). "Contrary" is defined as follows:

(1) A covered entity or business associate would find it *impossible* to comply with both the State and Federal requirements; or

(2) The provision of State law stands as an *obstacle* to the accomplishment and execution of the full purposes and objectives [of HIPAA].

45 C.F.R. § 160.202 (emphasis added). Pursuant to 45 C.F.R. § 160.203(b), even a state law provision that is contrary to HIPAA will not be preempted if it "relates to the privacy of individually identifiable health information and is more stringent" than HIPAA.

Congress enacted HIPAA to improve "the efficiency and effectiveness of the health care system, by encouraging the development of a health information system through the establishment of standards and requirements for the electronic transmission

- 5 -

of certain health information." Pub. L. No. 104-191, § 261, 110 Stat. 1936 (1996). To protect the security and privacy of health information, Congress delegated to the Secretary of Health and Human Services ("the Department") the authority to promulgate rules and regulations. 42 U.S.C. § 1320d-2(d). These regulations, the Standards for the Privacy of Individually Identifiable Health Information, are known as "the Privacy Rule." *See* 45 C.F.R. §§ 160, 164. The Privacy Rule provides that a covered entity may not disclose protected health information except as permitted by the provisions of the rule. 45 C.F.R. § 164.502(a). "Health information" is defined to include oral information. 45 C.F.R. § 160.103.

The Privacy Rule includes exceptions to the general rule against disclosure of health information without a patient's consent. One of those exceptions is in the case of a judicial or administrative proceeding. Subsection (e) of 45 C.F.R. § 164.512 provides as follows:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.
> (iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:
> (A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);
> (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

(vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(v) of this section.

In short, 45 C.F.R. § 164.512 allows disclosure of protected health information in the course of a judicial or administrative proceedings pursuant to a court order, or in response to lawful process not accompanied by a court order, as long as either (1) reasonable efforts have been made to provide notice to the patient, or (2) reasonable efforts have been made to secure a qualified protective order that prohibits disclosure for any purpose other than the litigation and requires the return or destruction of the health information at the end of the litigation. 45 C.F.R. § 164.512(e)(1)(ii)-(v).

What does HIPAA say about the use of ex parte interviews by defendants with a plaintiff's treating physicians? HIPAA's definition of health information includes oral information; thus, by its terms, the statute covers oral interviews. 45 C.F.R. § 160.103. We conclude that, under the language of the statute and regulations, as long as the procedural requirements of 45 C.F.R. § 164.512(e) are met, ex parte interviews allowed under state law during the course of a judicial proceeding would be permitted under HIPAA.

With regard to preemption, the plaintiffs acknowledge that the impossibility test is not an issue in this case. Thus, we must determine whether Tenn. Code Ann. § 29-26-121(f) "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of HIPAA. 45 C.F.R. § 160.202(2).

Tennessee Code Annotated section 29-26-121(f) mirrors the requirements of 45 C.F.R. § 164.512(e)(1) with respect to QPOs in that the Tennessee statute provides that the QPO "shall expressly limit the dissemination of any protected health information to the litigation pending before the court" and that it shall require the defendant(s) to "return to the healthcare provider or destroy any protected health information obtained in the course of any such interview . . . at the end of the litigation." Tenn. Code Ann. § 29-26-121(f)(1)(C)(i). Tennessee law imposes additional requirements not required by the federal law. The claimant has the right to seek to "limit or prohibit the defendant . . . from conducting the interviews . . . upon good cause shown that a treating healthcare provider does not possess relevant information . . . ." Tenn. Code Ann. § 29-26-121(f)(1)(B). Moreover, the QPO must expressly "provide that participation in any such interview by a treating healthcare provider is voluntary." Tenn. Code Ann. § 29-26-121(f)(1)(C)(ii).

Thus, Tenn. Code Ann. § 29-26-121(f) is consistent with HIPAA and includes some additional requirements. Under 45 C.F.R. § 160.203(b), even a state law that is contrary to HIPAA will not be preempted if it "relates to the privacy of individually identifiable health information and is more stringent" than HIPAA. Ms. Caldwell asserts that these additional requirements are not effective safeguards and discusses policy arguments as to why ex parte interviews should not be allowed. *See Alsip*, 197 S.W.3d at 727-29 (discussing policy reasons against ex parte interviews). However, it is not the role of this court to make policy decisions that contradict a statutory provision. *See generally Cary v. Cary*, 937 S.W.2d 777, 781 (Tenn. 1996); *Cooper v. Nolan*, 19 S.W.2d 274, 276 (Tenn. 1929). By enacting Tenn. Code Ann. § 29-26-121(f), the legislature rejected the policy determination reflected in *Alsip* in favor of allowing ex parte interviews.

We do not find that Tenn. Code Ann. § 29-26-121(f) is an obstacle to the accomplishment of the purposes of HIPAA. The Department stated that the Privacy Rule was intended to serve three major purposes:

(1) To protect and enhance the rights of consumers by providing them access to their health information and controlling the inappropriate use of that information; (2) to improve the quality of health care in the U.S. by restoring trust in the health care system among consumers, health care professionals, and the multitude of organizations and individuals committed to the delivery of care; and (3) to improve the efficiency and effectiveness of health care delivery by creating a national framework for health privacy protection that builds on efforts by states, health systems, and individual organizations and individuals.

65 Fed. Reg. 82462, 82463 (Dec. 28, 2000). Two Tennessee cases occurring prior to the effective date of subsection (f) found that Tenn. Code Ann. § 29-26-121 did not violate the obstacle test and was not preempted by HIPAA. Some of the reasoning found in these cases is instructive here. The case of *Webb v. Roberson*, No. W2012-01230-COA-R9-CV, 2013 WL 1645713, at \*1 (Tenn. Ct. App. Apr. 17, 2013), involved a challenge to the provision requiring medical malpractice claimants to provide certain notice sixty days before filing suit. The plaintiffs asserted, *inter alia*, that Tenn. Code Ann. § 29-26-121 allowed for the "disclosure of protected health information without either a court order or the patient's consent in contravention of HIPAA." *Webb*, 2013 WL 1645713, at \*13. The court disagreed, stating: "By pursuing a malpractice claim, the plaintiff consents to the disclosure of relevant medical information." *Id.* at \*14. Furthermore, the court noted, Tenn. Code Ann. § 29-26-121 limited "the discoverable medical records to those held by providers sent notice by the claimant, and it requires the records be treated as confidential and be used only by the parties, their counsel, and their consultants." *Id.* The court concluded that Tenn. Code Ann. § 29-26-121 did not impede the accomplishment or execution of HIPAA's goals. *Id.*

In *Stevens ex rel. Stevens v. Hickman Community Health Care Services, Inc.*, 418 S.W.3d 547, 557 (Tenn. 2013), the plaintiff argued that the pre-suit authorization requirement of Tenn. Code Ann. § 29-26-121(a)(2)(E) "impliedly frustrates HIPAA's purposes and objectives." Our Supreme Court rejected this argument:

Tenn. Code Ann. § 29-26-121(a)(2)(E) authorizes disclosures that are expressly contemplated by HIPAA. *See* 45 C.F.R. § 164.508. Additionally, although Tenn. Code Ann. § 29-16-121(a)(2)(E) requires that a plaintiff complete a HIPAA authorization as a pre-condition of filing suit, a plaintiff's decision whether to file suit is still a voluntary one. *See In re Collins*, 286 S.W.3d 911, 920 (Tex. 2009) . . . . Thus, complying with Tenn. Code Ann. § 29-26-121(a)(2)(E) neither conflicts with HIPAA nor stands as an obstacle to the accomplishment of HIPAA's full purposes and objectives. As such, Tenn. Code Ann. § 29-16-121(a)(2)(E) is not

"contrary" to HIPAA within the meaning of 45 C.F.R. § 160.202(1), and it is not preempted. *Id.*

*Stevens*, 418 S.W.3d at 557-58.

Courts in other states have considered the issue of whether state laws allowing ex parte interviews are preempted by HIPAA. In *Arons v. Jutkowitz*, 880 N.E.2d 831, 832 (N.Y. Ct. App. 2007), the court considered whether the defendants in a medical malpractice and wrongful death action were entitled to receive HIPAA authorizations to conduct ex parte interviews of the plaintiff's treating physicians. Pursuant to New York caselaw, ex parte interviews with treating physicians were generally allowed. *Arons*, 880 N.E.2d at 837-38. The *Arons* court concluded that HIPAA did not preempt New York state law, reasoning that "there can be no conflict between New York law and HIPAA on the subject of ex parte interviews of treating physicians because HIPAA does not address this subject." *Id.* at 842. The court further stated that "the Privacy Rule does not prevent this informal discovery from going forward, it merely superimposes procedural prerequisites." *Id.*

The court in *Holman v. Rasak*, 785 N.W.2d 98, 100 (Mich. 2010), held that "ex parte interviews, which are permitted under Michigan law, are also consistent with HIPAA regulations, provided that 'reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of [45 C.F.R. 164.512(e)(1)(v)].'" (quoting 45 C.F.R. § 164.512(e)(1)(ii)(B)). The *Holmes* court specifically addressed the obstacle test:

> Nor does Michigan law concerning ex parte interviews "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of" HIPAA—the second definition of "contrary" under 45 CFR 160.202. Plaintiff claims that allowing ex parte interviews frustrated HIPAA's purpose of protecting the privacy of an individual's health information. While HIPAA is obviously concerned with protecting the privacy of individuals' health information, it does not enforce that goal to the exclusion of other interests. Rather, it balances the protection of individual privacy with the need for disclosure in some situations. . . . Given HIPAA's interest in balancing the need for disclosure in certain contexts with the importance of individual privacy, we cannot conclude that ex parte interviews are "contrary" to the objectives of HIPAA, as long as the interviews are sought according to the specific requirements of 45 CFR 164.512(e).

*Holman*, 785 N.W.2d at 446-47. The court concluded that Michigan law did not violate the obstacle test "given the balance HIPAA strikes between the protection of individual privacy and the necessity of disclosure in some contexts." *Id.* at 449.

- 10 -

In *Murphy v. Dulay*, 768 F.3d 1360 (11th Cir. 2014), the court concluded that the Florida law at issue did not violate the obstacle test:

> [The statute] does not stand "as an obstacle" to fulfilling "the purposes and objectives" of HIPAA. *See* 45 C.F.R. § 160.202(2). One of HIPAA's stated objectives is "reducing the administrative costs of providing and paying for health care." 42 U.S.C. § 1320d-1(b). Likewise, § 766.1065, by allowing health care providers to investigate and potentially settle claims before litigation commences, serves to reduce the overall cost that medical negligence litigation places on Florida's health care system. The Florida law, like HIPAA, attempts to strike a balance between privacy protection and the efficient resolution of medical negligence claims.

*Murphy*, 768 F.3d at 1377. *See also McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002-MLB, 2006 WL 2375614, at *1-2 (D. Kan. 2006) (denying plaintiff's request to allow plaintiff's counsel to be present at defense counsel's meeting with a treating physician); *Bayne v. Provost*, 359 F. Supp. 2d 234, 241 (N.D. N.Y. 2005) (finding that HIPAA controlled in the absence of any state law and would allow ex parte interviews where all requirements of regulations were met); *Caldwell v. Chauvin*, 464 S.W.3d 139, 148-55 (Ky. 2015) (finding that Kentucky law did not prohibit ex parte interviews by defendants with a plaintiff's treating physicians, and that HIPAA also did not prohibit such interviews). There are cases that have reached the opposite conclusion—i.e., that HIPAA does not allow ex parte communications between counsel and healthcare providers. *See, e.g., State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 156-57 (Mo. 2010) (finding that an ex parte interview does not qualify as being in the course of "judicial proceedings" under HIPAA, therefore a trial court lacks authority to issue an order under HIPAA allowing an ex parte interview).

We find the reasoning of the Tennessee cases that have addressed the preemption issue, as well as the cases from other states that have reached the same conclusion, to be persuasive. We conclude that Tennessee Code Annotated section 29-26-121(f) is not preempted by HIPAA.

Denial of QPO

We find that the trial court erred in denying the defendants' petition for a QPO when there is no dispute that the defendants complied with the statute's procedural requirements and Ms. Caldwell did not object based upon relevance.

Our Supreme Court has instructed:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool,* 974 S.W.2d 677, 679 (Tenn. 1998).

*Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

The language of Tenn. Code Ann. § 29-26-121(f) is clear:  When a defendant has filed a petition for a QPO allowing him or her to obtain an ex parte interview with a patient's treating healthcare provider as defined by § 29-26-101, "[s]uch petition *shall* be granted" if certain conditions are met.  (Emphasis added).  The statutory conditions are: (A) that the petition must identify the treating healthcare providers with whom an interview is sought; (B) that the claimant may seek to "limit or prohibit the defendant or defendants . . . from conducting the interviews, which [request] may be granted *only* upon good cause shown that a treating healthcare provider does not possess relevant information as defined by the Tennessee Rules of Civil Procedure"; (C)(i) that the QPO "shall limit the dissemination of any protected health information to the litigation pending before the court" and require the defendant or defendants "to return to the healthcare provider or destroy any protected health information obtained in the course of any such interview . . . at the end of the litigation"; and (C)(ii) that the QPO shall provide that participation in any ex parte "interview by a treating healthcare provider is voluntary." Tenn. Code Ann. § 29-26-121(f)(A)-(C) (emphasis added).   In the present case, there is no dispute that all of the preceding conditions are satisfied.  Ms. Caldwell made no objection to the form of the petition or any objection based upon good cause showing that a treating physician did not have relevant information.  It is undisputed that the defendants satisfied all of the conditions of Tenn. Code Ann. § 29-26-121(f).

By requiring that the defendants take the "discovery-only" depositions of the treating healthcare providers, the trial court ignored the mandates of Tenn. Code Ann. § 29-26-121(f), which does not contemplate the formality of a deposition.  The plain language of subdivision (f) of Tenn. Code Ann. § 29-26-121 requires ex parte interviews—i.e., interviews held outside the presence of claimant and claimant's counsel.

- 12 -

The intent of the General Assembly, as expressed in the language of the statute, was to authorize defendants to conduct ex parte interviews where certain conditions are met. We conclude that the trial court erred in denying the defendants' petition for a QPO.

CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed, and the case is remanded for entry of a qualified protective order consistent with this opinion. Costs of this appeal are assessed against the appellee, Angela Caldwell, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE